**UNITED STATES COURT OF APPEALS**
**Tenth Circuit**
**Byron White United States Courthouse**
**1823 Stout Street**
**Denver, Colorado 80294**
**(303) 844-3157**

Patrick J. Fisher, Jr.                                                                 Elisabeth A. Shumaker
Clerk                                                                                         Chief Deputy Clerk

May 9, 2000


**TO:**   ALL RECIPIENTS OF THE OPINION

**RE:**   98-8023, *Hynes v. Energy West*
Filed on May 2, 2000

The opinion filed on May 2, 2000, contains a typographical error. On page one of the court's slip opinion, in the section listing counsel for the appellees, Mr. Tiedeken's name was misspelled. The corrected attorney section should appear as follows:

Robert W. Tiedeken of Wolf & Tiedeken, LC, Cheyenne, Wyoming (Richard Wolf of Wolf & Tiedeken, William L. Simpson of Simpson, Kepler & Edwards, LC, Cody, Wyoming, and Michael Burg, Kerry Jardine, and Diane Vaksdal Smith of Burg Simpson Eldredge Hersh & Houliston, P.C., Englewood, Colorado, with him on the brief) for Plaintiffs-Appellees.

A corrected copy of page one is attached.

Sincerely,
Patrick Fisher, Clerk of Court


By:   Keith Nelson
Deputy Clerk


encl.

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 2 2000**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

RANDY HYNES and MELISSA
HYNES, husband and wife,

     Plaintiffs-Appellees,

v.

ENERGY WEST, INC., a Montana
corporation,

     Defendant-Appellant.

No. 98-8023

---

**Appeal from the United States District Court**
**for the District of Wyoming**
**(D.C. No. 96-CV-330B)**

---

Richard A. Mincer of Hirst & Applegate, PC, Cheyenne, Wyoming, for
Defendant-Appellant.

Robert W. Tiedeken of Wolf & Tiedeken, LC, Cheyenne, Wyoming (Richard
Wolf of Wolf & Tiedeken, William L. Simpson of Simpson, Kepler & Edwards,
LC, Cody, Wyoming, and Michael Burg, Kerry Jardine, and Diane Vaksdal Smith
of Burg Simpson Eldredge Hersh & Houliston, P.C., Englewood, Colorado, with
him on the brief) for Plaintiffs-Appellees.

---

Before **EBEL,** Circuit Judge, **McWILLIAMS,** Senior Circuit Judge and
**MURPHY**, Circuit Judge.

---

**EBEL**, Circuit Judge.

Plaintiffs-Appellees Randy and Melissa Hynes (the "Hynes") brought an action against Defendant-Appellant Energy West, Inc. ("Energy West") after the Hynes were injured when natural gas that had accumulated in their apartment building exploded. The Hynes alleged negligence and willful and wanton conduct on the part of Energy West. At trial, the jury found in favor of the Hynes and awarded them compensatory damages. Energy West appeals the judgment of the district court on the grounds of improper jury instructions, improper comments by the district court to the jury, improper admission of expert testimony, improper application of Wyoming Statutes § 37-12-302, and excessive damages. We AFFIRM on all issues.

## BACKGROUND

On February 3, 1996, a natural gas explosion occurred at the Cedar Ridge Apartments in Cody, Wyoming. Melissa and Randy Hynes, residents of the building, were injured by the explosion. Cody Gas Company, the supplier of the natural gas, is a division of Energy West.

This explosion appears to have resulted from the following course of events. On the night of February 3, a small explosion occurred in the apartment of other tenants in the apartment building, Troy Wiant and Mark Ekberg. Specifically, flames burst out of the electric baseboard heater when Ekberg switched off the light in the bathroom. Following this explosion, Ekberg notified

- 2 -

the Cody Fire Department and the dispatcher, Jason Herbert, paged Fire Chief Jerry Parker, directing him to the scene. Parker asked Wiant and Ekberg if the Cedar Ridge Apartments had natural gas service and they correctly informed Parker that the apartments do not utilize natural gas. Parker did not test for gas with the gas detector he had brought with him, however. In an attempt to shut off the power to the baseboard heater, Parker began switching off circuit breakers and, as a result, sparked a second explosion. The Hynes were injured in the second explosion, which destroyed the apartment building. Both were treated at the Salt Lake City Burn Unit for their burns.

The parties agree that natural gas most likely leaked into the apartment building through the following means. In 1954, a gas pipeline was installed on private property adjacent to the Hynes' apartment building.[1] An excavation of the line following the explosion revealed that the gas line was cracked at a point approximately eighteen feet from the apartment building, where the pipe was buried at a depth of approximately twelve inches.[2] It was estimated that the pipe

---

[1]The gas line was installed by Glen Winters on his private property. Winters' property, including the portion containing the gas line, was subsequently sold to William Kramp, the owner of the property at the time of the explosion at issue in this case. This gas line was connected to a Cody Gas main at the street.

[2]The pipe was slightly flattened at the point of the crack. Energy West argued at trial that U.S. West dented the pipe with heavy equipment, and thereby weakened it, when it installed telephone lines near the break at the time the apartment building was constructed in 1983.

had been leaking for some time between a few hours and two days before the explosion occurred. Because the ground was frozen in February, natural gas flowed along the path of least resistance, which appears to have been U.S. West telephone lines that intersected the gas line near the cracking and serviced the Cedar Ridge Apartments.

The Hynes brought claims of negligence, breach of warranty, strict liability, and willful and wanton conduct against Energy West, seeking both compensatory and punitive damages. The Hynes withdrew their breach of warranty and strict liability claims before trial. With respect to the negligence claim, the Hynes alleged that Energy West had breached its duty of care by allowing the pipeline to remain in service even though it was in an unsafe condition. The Hynes claimed that the following factors contributed to the unsafe condition: (1) the piping was made of steel that became highly brittle and susceptible to fracture in cold weather; (2) it had been damaged by vehicles and other external forces; and (3) the underground portion of the pipe had been buried at a dangerously shallow depth. The Hynes also argued that Energy West was negligent because it had failed to odorize its gas properly.[3]

---

[3]In their Complaint, the Hynes specifically alleged that the unsafe condition of the pipeline violated 49 C.F.R. §§ 192.613 and 192.703 and that the improper odorization violated 49 C.F.R. § 192.625. Although the wording of the Complaint suggests that the Hynes intended to proceed on a theory of negligence per se

(continued...)

- 4 -

There was a three-week trial on the Hynes' claims of negligence and willful and wanton conduct. The Hynes prevailed on the negligence claim and the jury awarded Randy Hynes $3,259,685.89 and Melissa Hynes $2,056,400.73 in compensatory damages. The jury found that Energy West had not acted willfully and wantonly and therefore no punitive damages were awarded. The jury apportioned fault among various actors in the following manner: Energy West, 55%; U.S. West, 25%; Jerry Parker (fire chief), 10%; Jason Herbert (dispatcher), 5%; Troy Wiant (apartment building tenant), 5%. Other than Energy West, none of these actors was a party to the action.

**DISCUSSION**

The district court exercised jurisdiction pursuant to 28 U.S.C. § 1332(a) (diversity jurisdiction). We have appellate jurisdiction pursuant to 28 U.S.C. § 1291. Both parties agree, and we concur, that Wyoming substantive law applies.

I. Jury Instructions

Energy West challenges the district court's instructions to the jury on several bases. In a diversity case, the substance of a jury instruction is a matter of state law; however, federal law controls the determination of whether an error in the instructions requires reversal. See Wolfgang v. Mid-America Motorsports,

---

[3](...continued)
based on these regulatory violations, the PreTrial Order evidently amended the Complaint to allege claims of ordinary negligence.

<u>Inc.</u>, 111 F.3d 1515, 1525 (10th Cir. 1997); <u>Dillard & Sons Constr., Inc. v.</u>

<u>Burnup & Sims Comtec, Inc.</u>, 51 F.3d 910, 915 (10th Cir. 1995).

> With respect to a district court's jury instruction decisions, i.e.,
> whether or not to give a particular instruction, we . . . review for
> abuse of discretion.  As for the instructions themselves, we conduct a
> de novo review to determine whether, as a whole, the instructions
> correctly stated the governing law and provided the jury with an
> ample understanding of the issues and applicable standards.

<u>Allen v. Minnstar, Inc.</u>, 97 F.3d 1365, 1368 (10th Cir. 1996) (citations omitted).

### A.  Standard of Care

The parties agree that the appropriate standard of care in this case is

ordinary care under all of the circumstances.  However, Energy West contends

that the trial court improperly instructed the jury that in order to meet the ordinary

care standard, Energy West was required to exercise a high degree of care because

natural gas is an ultrahazardous instrumentality.[4]

In <u>Wyrulec Co. v. Schutt</u>, the Wyoming Supreme Court stated that

although the standard of care in a case involving an ultrahazardous

---

[4]The Wyoming Supreme Court appears never specifically to have held that
natural gas is an ultrahazardous instrumentality, although the court has implicitly
recognized it as such.  <u>See</u> <u>Wyrulec Co. v. Schutt</u>, 866 P.2d 756, 761 & n.2 (Wyo.
1993); <u>see also</u> <u>Pan Am. Petroleum Corp. v. Like</u>, 381 P.2d 70, 74 (Wyo. 1963)
(referring to natural gas as a "dangerous agency").  Although Energy West
emphasized in its brief that it was not conceding that natural gas was "inherently
dangerous," Energy West stated during oral argument that it was not arguing that
the district court erred when it characterized natural gas as having dangerous
properties and qualities.

instrumentality is "ordinary care under all of the circumstances[,] . . . . what constitutes ordinary care increases as the danger increases." Wyrulec, 866 P.2d at 762. The court continued: "The concept of ordinary care accommodates all circumstances so that the degree of care varies with the circumstances. Ordinary care which is commensurate with the danger does not impose a higher duty, but more fully defines what is ordinary care under the facts presented." Id. (quotations and citations omitted). In sum, under Wyoming law, a defendant engaged in an ultrahazardous activity must exercise a degree of care commensurate with the danger to meet the ordinary care standard.

In both Wyrulec and Furman v. Rural Electric Co., 869 P.2d 136 (Wyo. 1994), plaintiffs had sought jury instructions indicating that the defendant electric companies were engaged in ultrahazardous activities and that, for this reason, the defendants were required to exercise a high degree of care to meet the ordinary care standard. See Wyrulec, 866 P.2d at 761; Furman, 869 P.2d at 142. In both cases, the trial court refused to give such instructions. See Wyrulec, 866 P.2d at 762; Furman, 869 P.2d at 143. The Wyoming Supreme Court affirmed both rulings. See Wyrulec, 866 P.2d at 762; Furman, 869 P.2d at 143. In reaching its conclusion in Wyrulec, the court emphasized that "[a]ppellee's contention that the jury should be made aware of this higher standard by jury instructions is incorrect." Wyrulec, 866 P.2d at 762. The court continued, explaining that

"[u]nder the proper circumstances, it is counsel's function to present the jury with argument that electricity's inherently dangerous nature requires the highest degree of care . . . ." Id. The court reiterated this view in Furman: "This court has . . . held that a jury should not be instructed there is a higher degree of care when a dangerous instrumentality is involved." Furman, 869 P.2d at 143 (citing Wyrulec).

Energy West contends that, rather than requiring counsel to argue that Energy West had an obligation to exercise a higher degree of care to meet the ordinary care standard in accordance with Wyrulec and Furman, the district court improperly instructed the jury that natural gas is an ultrahazardous instrumentality requiring a high degree of care. Energy West bases its argument on three portions of the instructions. First, Energy West points to the following language in Instruction No. 7: "[N]atural gas is considered an ultrahazardous substance under Wyoming law. In determining whether Defendant Energy West, Inc. acted with ordinary care you are instructed that what constitutes ordinary care under the law increases as the danger increases." Energy West also objects to Jury Instruction No. 10: "To put it another way, any increase in foreseeable danger requires

increased care."[5]  Finally, Energy West relies on a portion of Jury Instruction No. 11:

> Because of the dangerous characteristics and properties of natural gas, a utility engaged in the business of transmitting and distributing natural gas has a duty to the public of exercising the high degree of care and diligence proportionate to the danger presented that was known or should have been known by the utility in building, emplacing and maintaining its gas mains and service lines.

Although it is true that the Wyoming Supreme Court has indicated that communication to the jury of the high degree of care associated with dangerous instrumentalities is better left to trial counsel, the Wyrulec and Furman decisions do not hold that a trial court's decision to give such instructions is reversible error.  See Wyrulec, 866 P.2d at 762; Furman, 869 P.2d at 143.

We observe that Instruction Nos. 7, 10, and 11 accurately stated the rules of law set forth in Wyrulec.  Instruction No. 7 was, in fact, a direct quote from the opinion in that case.  See Wyrulec, 866 P.2d at 762.  Although Instruction No. 11 did use the words "high degree" of care when distributing natural gas, that instruction only requires a high degree of care "proportionate to the danger presented."  That is consistent with Wyrulec.

---

[5] The Hynes argue that Energy West failed to object to Instruction No. 10 at the instruction conference.  The record indicates that Energy West did, in fact, properly object to Instruction No. 10.  For purposes of the conference, it was apparently numbered Instruction No. 11, and Energy West objected to this instruction.

Other jury instructions emphasized that the standard of care was ordinary care. Instruction No. 6, the basic negligence instruction, defined negligence as the "failure to use ordinary care under the circumstances." Similarly, Instruction No. 7 defined ordinary care as "that care which reasonably prudent persons exercise in the management of their own affairs, in order to avoid injury to themselves or their property, or the persons or property of others." Finally, Instruction Nos. 10 and 14 refer to the standard of care as "ordinary care." For example, Instruction No. 14 stated, "The standard is always ordinary care." In conclusion, we find that the jury instructions, when read as a whole, properly required the jury to apply the "ordinary care" standard and therefore correctly stated the governing law.

## B. Instruction No. 11

Energy West contends that there are numerous other errors as well relating to the following portion of Instruction No. 11:

> If leaks occur through the fault of the utility, it is liable for any resulting injury. Where the leak is due to other causes, a utility will be liable for any resulting injury unless it has exercised proper care in inspecting its gas mains and service lines. Even where a utility has exercised proper care in inspecting its gas mains and service lines, it will be liable for any resulting injury if it discovers or is given notice that its gas mains or service mains have become unsound and fails to repair them within a reasonable period of time.
> If a utility that has failed to exercise the required care could have anticipated that another person's negligent act would follow its own, the utility is not relieved from liability by the other person's subsequent negligent act.

Energy West first argues that the second sentence of the language quoted above eliminates the requirement that there be a causal connection between negligence on the part of the defendant and the injury. Energy West urges that this instruction would allow the defendant to be held liable even if its negligence were not the cause of the gas leak. Energy West argues that a defendant gas company could be held liable for a gas leak caused by a third party if its only negligent act were the failure to inspect its pipes but the failure to inspect did not cause the injury.

We find that the lack of a causation element in this particular instruction does not warrant reversal because the instructions, when taken as a whole, correctly stated the governing law and provided the jury with an ample understanding of causation. Specifically, Jury Instructions Nos. 12 and 15 require a finding of proximate cause. ("There is liability only when the wrongful act is a proximate cause and not a remote cause of the event.") ("An injury or damage is proximately caused by an act, or a failure to act, whenever it appears from the evidence in the case that the act or omission played a substantial part in bringing about the injury or damage.") In addition, the jury, in its special verdict,

specifically found that the acts or omissions of Energy West both "proximately caused" the explosion and "caused" the Hynes' injuries.[6]

Energy West also argues, however, that the jury instruction erroneously failed to include a notice requirement in the following sentence: "Where the leak is due to other causes, a utility will be liable for any resulting injury unless it has exercised proper care in inspecting its gas mains and service lines." Specifically, Energy West claims that the pipe in question was not its own but rather was privately owned and that, for this reason, Energy West had no obligation to maintain or repair unless it received notice of a leak. In support of this argument, Energy West cites the Wyoming's Supreme Court's decision in <u>Boyce v. Northern Utilities Co.</u>, 75 Wyo. 500, 513, 297 P.2d 820, 824-25 (1956), for the proposition that a "gas company is liable when gas escapes from the consumer's pipes or appliances after notice of a leak or escape, and failure to repair." In a related argument, Energy West urges that the instructions improperly stated that a gas company may be held liable for the failure to repair pipes if the company discovers or receives notice that the pipes were "unsound," and that, under

---

[6]Energy West also argues that the causation problem relating to Instruction No. 11 caused the company to be held "strictly liable" for the Hynes' injuries. Energy West's argument fails because the instructions clearly required the jury to find negligence on the part of Energy West, and the jury's special verdict indicated that it made such a finding.

- 12 -

Wyoming law, a gas company only has the obligation to repair once it discovers or has notice of an actual "leak."

However, Energy West does not point to any portion of the record that shows it objected to this jury instruction on these specified grounds. Energy West's objection to Instruction No. 11 during the jury instruction conference did not clarify that the basis for its objection was that the instruction needed to include a notice requirement because the pipes were on private property or that the instruction improperly substituted the term "unsound" for "leak." Rather, Energy West only argued generally that the instruction improperly set forth Wyoming law.[7] We decline to consider these arguments because they were not

---

[7]At trial, counsel for Energy West stated: "The language [of Instruction No. 11] is taken out of context and misrepresents what the Wyoming Supreme Court said in [MacKrell v. Bell H$_2$S Safety]. . . . My point is that the language that is in the instruction is not the language quoted in the case as referenced and is not an appropriate statement of Wyoming law."

This instruction did not, in fact, misstate Wyoming law. The court derived Instruction No. 11 in part from the Wyoming Supreme Court case MacKrell v. Bell H$_2$S Safety, 795 P.2d 776 (Wyo. 1990). MacKrell in dicta explains the circumstances under which a gas company may be held liable for injuries resulting from gas leaks:

> If leaks occur through the fault of the company, it is liable without actual notice for any resulting injury, but, where the leak is due to other causes, and the company has used proper care in inspecting its pipes, liability does not attach until the company has had notice and a reasonable time to repair, after which it is liable even though the pipe where the leak occurred was owned by the consumer.

(continued...)

- 13 -

raised before the district court.  See Fed. R. Civ. P. 51 ("No party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection.")

Finally, Energy West contends that the following language from Instruction No. 11 misstates Wyoming law: "If a utility that has failed to exercise the required care could have anticipated that another person's negligent act would follow its own, the utility is not relieved from liability by the other person's subsequent negligent act."  Energy West cites no authority in support of its objection to this portion of the instruction.  In fact, the Wyoming Supreme Court quoted a similar rule of law for intervening negligence with approval in Phelps v. Woodward Construction Co., 66 Wyo. 33, 55-56, 204 P.2d 179, 187 (1949) ("If the original wrongdoer 'could have anticipated that the intervening act of negligence might, in a natural and ordinary sequence, follow the original act of negligence, the person first in fault is not released from liability by reason of the

_____

[7](...continued)
MacKrell, 795 P.2d at 780 (quotations omitted) (quoting Boyce, 75 Wyo. at 513, 297 P.2d at 824).  MacKrell stands for the proposition that a gas company is liable for damages caused by a third party if the gas company failed to exercise proper care in inspecting its pipes, provided of course that the failure to exercise proper care was a proximate cause of the accident.  Thus, the statement in Instruction No. 11 that Energy West would be liable for any injuries resulting from the acts of third parties if it failed to inspect its pipes follows Wyoming law.

- 14 -

intervening negligence of another.'" (citation omitted)).  The district court relied

on Phelps in drafting Instruction No. 11.  We find that this instruction accurately

described the theory of intervening negligence under Wyoming law.

## II.  Improper Comments by the Trial Judge

Energy West argues that the district court made a number of improper

comments to the jury during the course of the trial.

> The trial court has wide discretion in stating facts and commenting
> on the evidence.  It is within the trial court's power to direct the trial
> in a manner reasonably thought to bring about a just result and in
> pursuit of that goal nonprejudicial comments may be made from time
> to time.  Conduct of trial proceedings will not be disturbed on appeal
> unless it affirmatively appears from the record that the trial court
> abused its discretion.

Oklahoma Federated Gold & Numismatics, Inc. v. Blodgett, 24 F.3d 136, 140

(10th Cir. 1994) (citations and quotations omitted).

Energy West first takes issue with a statement made by the trial court

concerning the admission of a 1955 pipe standard.[8]  Upon overruling Energy

West's objection, the court made the following statement to the jury:

> It is relevant, and the jury is instructed that a gas company had a duty
> of maintenance and supervision of its facility, and that in the course
> of this if there is an unsuitable quality of pipe, it may be necessary in
> maintaining of the system to repair and replace that pipe if it is
> apparent that it is unsuitable.

Energy West made an oral motion for mistrial based on this statement by the trial

judge, and the court denied that motion.  Energy West objected to this comment

again in its Memorandum in Support of Motion for a New Trial.  On appeal,

---

[8]Energy West also claims that a 1955 pipe standard was improperly
admitted to show negligence on the part of the defendant.  Energy West relies on
an unpublished Colorado Court of Appeals case, Bennett v. Greeley Gas Co.,
1998 WL 385920 (Colo. App. 1988), for the proposition that safety codes and
regulations cannot be applied retroactively.  Energy West argues that because the
pipes were installed in 1954, the 1955 standard could not be used as evidence of
negligence on the part of Energy West.

 We review a district court's evidentiary rulings under an abuse of
discretion standard.  See Staley v. Bridgestone/Firestone, Inc., 106 F.3d 1054,
1513 (10th Cir. 1997) (reviewing trial court's decision to admit federal
regulations into evidence in a products liability action under an abuse of
discretion standard).  The holding of Bennett is inapposite in the present case
because the Hynes did not seek to admit the evidence for the purpose of showing
that Energy West acted negligently in 1954.  In fact, the court made this clear
when it told the jury that "a gas utility company has a duty of maintenance and
supervision of its facility, and that in the course of this if there is an unsuitable
quality of pipe, it may be necessary in maintaining of the system to repair and
replace that pipe if it is apparent that it was unsuitable."  Thus, the standard was
relevant to the question of the company's negligence with respect to its ongoing
duty to repair or replace pipe.  We therefore find that the trial court did not abuse
its discretion when it chose to admit the 1955 pipe standard into evidence.

- 16 -

Energy West argues that this comment misstated Wyoming law and prejudiced the jury. We find that this comment is an accurate statement of the law and that the trial court therefore did not abuse its discretion. See Northwest States Utils. Co. v. Brouilette, 65 P.2d 223, 228 (Wyo. 1960) ("A gas company must use reasonable care to maintain and keep in repair its pipes and equipment–those owned and controlled by it.")

To the extent Energy West argues that the comment was improper because Energy West believes it in fact had no duty under Wyoming law to maintain or inspect the pipe in this case unless it had notice of a leak, we deem this argument to have been raised for the first time on appeal.[9] "If a party fails to raise an issue in the trial court, it is deemed waived on appeal unless plain error is demonstrated." Hinds v. General Motors Corp., 988 F.2d 1039, 1045 (10th Cir.1993). We cannot conclude that the trial court committed plain error in making this comment. In this case, there was some evidence that Energy West may have assumed the duty to inspect and maintain the pipe. In any event, in the absence of clear and controlling holdings to the contrary from the Wyoming

---

[9]In its oral motion for a mistrial, Energy West only alleged in a general manner that the comment "did not address the proper scope of the standard of care in the industry." Similarly, in its Motion for a New Trial, Energy West only vaguely asserted that the comment was "inappropriate and erroneous."

Supreme Court, we cannot say that the trial court committed plain error in stating that Energy West had a duty to maintain and inspect the pipe in this case.

Energy West claims that the trial court also abused its discretion when it stated that there was a "patrolling problem" in reference to Energy West's obligation to patrol its pipelines under federal law. The record indicates that Energy West's attorney did not object to this comment at the time it was made nor did Energy West raise this issue in its Motion for a New Trial. We find no error in this comment because, in context, it was directed only toward an effort to understand what counsel were arguing. It does not appear to have been an appraisal of the evidence by the judge. However, if it were error, it would be harmless. In the first place, on its face it is fairly innocuous. Second, Jury Instruction No. 48 instructed the jury that it was at liberty to disregard all comments of the court in making its decision.[10] See Appliance Distrib. v. Mercury Elec. Corp., 202 F.2d 651, 654 (10th Cir. 1953) (indicating that such an

---

[10]Instruction No. 48 states in its entirety:

During the course of a trial, I may occasionally have asked questions of a witness in order to bring out facts not then fully covered in the testimony. Please do not assume that I hold any opinion on the matters to which my questions may have related. Remember that you, as jurors, are at liberty to disregard all comments of the Court in arriving at your own findings as to the facts.

instruction is relevant to appellate review where appellant alleges improper comments by the court).

Finally, Energy West alleges that Judge Brimmer had improper ex parte contact with the jurors when he told them, immediately before they began deliberations, that he would be leaving town the next day at noon. Energy West asserts that this comment had the effect of "speeding along" the jury deliberations and effectively imposed a deadline on the deliberations. When read in context, it is clear that the comments were not prejudicial because the judge assured jurors that another judge would be available to take over the case if their deliberations extended past his departure time and that such an event would pose no problem.

### III. Expert Witness Testimony

Energy West argues that the trial court improperly admitted the expert testimony of Duane Kniebes. We review the decision of the district court to admit or exclude expert testimony under an abuse of discretion standard. See Kumho Tire Co. v. Carmichael, — U.S. —, 119 S. Ct. 1167, 1176, 143 L. Ed. 2d 238 (1999). That standard applies both to the trial court's decision concerning the relevant criteria to use in evaluating reliability and the trial court's application of those criteria to the evidence in reaching its ultimate conclusion as to admissibility. Id.

Energy West specifically claims that the trial court improperly admitted testimony concerning scientific theories offered by the Hynes' expert witness Duane Kniebes, in connection with their claim that Energy West improperly odorized its natural gas. Because natural gas has no odor in its natural state, natural gas suppliers odorize their gas with other chemicals to promote detection and thus prevent injury to users. See 27A Am. Jur. 2d Energy & Power Sources § 384 (1996). The Hynes proceeded at trial on the theory that improper odorification by Energy West constituted negligence that resulted in injury to the Hynes because they were unable to smell the natural gas that had seeped into their apartment building. Kniebes testified that Energy West's natural gas may have lost its odor through either or both of two different chemical reactions: neutralization and oxidation. Kniebes' theory was that in alkaline soils, such as those found in Cody, Wyoming, a neutralization reaction occurs that eliminates the odor of natural gas. Kniebes further testified that natural gas companies in the southwestern United States often use an odorant called thiophene to odorize natural gas because this chemical is not neutralized in alkaline soils. Finally, Kniebes testified that a chemical reaction between the odorant and the iron oxides present in the soil in Cody, Wyoming may also have resulted in odor loss. Overall, Kniebes' testimony suggested that Energy West was negligent in failing

to use a blend containing the odorant thiophene which resists odor loss in alkaline soils and soils containing iron oxide.

## A. Unfair Surprise

Energy West argues that the admission of Kniebes' testimony concerning the oxidation theory prejudiced Energy West through unfair surprise because "the theory was not addressed in the [Hynes'] expert designation or report" in violation of Federal Rule of Civil Procedure 26(a)(2) and "[t]he first time [Kniebes] ever mentioned oxidization was at trial." The record contradicts both of these assertions. In the expert report, Duane Kniebes referred to the fact that an oxidization reaction may play a role in odorant loss. ("Mercaptans also oxidize readily with iron oxide such as that found in some soils and rusty steel pipe. Thiophene does not undergo [this] reaction[].") Even assuming, arguendo, that evidence concerning the oxidation theory resulted in unfair surprise at trial, Energy West cannot prevail on this argument because it did not take steps to cure the prejudice. "[W]hen a party requests a new trial on the basis of surprise testimony it must be able to show surprise, prejudice, and an attempt to cure the prejudice such as a motion for a continuance." Marino v. Otis Eng'g Corp., 839 F.2d 1404, 1411 (10th Cir. 1988). Energy West did not seek a continuance when Kniebes testified about the oxidation theory on direct examination, nor did it clearly move to strike Kniebes' testimony when it made its objection. For the

foregoing reasons, we conclude that admission of the evidence concerning the oxidation theory does not warrant a new trial.

## B. Daubert

Energy West argues that Kniebes' testimony concerning the oxidation and neutralization theory was improperly admitted because the testimony did not meet the requirements of Federal Rule of Evidence 702 and Daubert v. Merrill Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). Rule 702 provides:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Fed. R. Evid. 702. In Daubert, the Court concluded that the expert testimony must be both reliable and relevant to be admitted into evidence pursuant to Rule 702. See Daubert, 509 U.S. at 589-92.

Energy West contends that Duane Kniebes' testimony was not sufficiently reliable and was therefore improperly admitted into evidence. In Daubert, the Court explained the reliability prong of Rule 702:

> The subject of an expert's testimony must be "scientific . . . knowledge." The adjective "scientific" implies a grounding in the methods and procedures of science. Similarly, the word "knowledge" connotes more than subjective belief or unsupported speculation . . . . [I]n order to qualify as "scientific knowledge," an inference or assertion must be derived by the scientific method. Proposed

- 22 -

testimony must be supported by appropriate validation–i.e., "good grounds," based on what is known. In short, the requirement that an expert's testimony pertain to "scientific knowledge" establishes a standard of evidentiary reliability.

Id. at 589-90. The Court went on to list a number of factors that bear on a trial court's assessment of reliability. These are: (1) whether the theory has been tested; (2) whether the theory has been subject to peer review and publication; (3) the known or potential rate of error associated with the theory; and (4) whether the theory has attained widespread or general acceptance. See id. at 592-94.

The district court conducted a hearing on the issue of whether Duane Kniebes' testimony was sufficiently reliable for purposes of Rule 702. During the Daubert hearing, the Hynes established that Kniebes has significant expertise in the area of gas odorization. After obtaining a Bachelor of Science in Chemistry and a Master's Degree in Physics, Kniebes spent more than thirty years working at the Institute of Gas Technology ("IGT"), a non-profit research, education, and information services organization affiliated with the Illinois Institute of Technology. Kniebes stated that he performed scientific research concerning chemical reactivity and soils for IGT. Kniebes further testified that he had studied chemical tests made on soil samples taken from the area near the break in the gas line. These tests indicated the acidity of the soil and its iron oxide content.

Kniebes testified that his knowledge of the neutralization reaction was based on three pieces of information: (1) a conversation that occurred in the 1950s between Kniebes and a chemist who worked for gas companies located in the southwest United States that had been having difficulties with alkaline soils and had opted to use thiophene as an odorant in response to the problem; (2) the fact that Kniebes performed a test at his home in which he bubbled natural gas that contained the same odorant as that used by Cody Gas through normal water and through alkaline water and determined that the gas lost its odor when bubbled through alkaline water; and (3) a statement contained in a handbook published by Natural Gas Odorizing to the effect that the type of odorant used by Cody Gas would not result in chemical reactions in relatively neutral soils. Kniebes also testified during the <u>Daubert</u> hearing that he had acted as a consultant to the gas industry during his career and that he had recommended that gas companies operating in areas where there are alkaline soils use thiophene as an odorant because it does not undergo a neutralization reaction.

With respect to the oxidization theory, Kniebes testified that this reaction is well-known in the area of gas odorization. Kniebes also stated that he had done research on the reaction between odorants and iron oxides while at IGT.

Energy West argues that this evidence was insufficient to establish reliability under <u>Daubert</u> and that the trial court abused its discretion when it

- 24 -

chose to admit the testimony. Energy West argues that none of the four factors enumerated by the Supreme Court in <u>Daubert</u> as indications that the neutralization or oxidation theories are based on "scientific knowledge" (testing, peer review/publication, rate of error or general acceptance) has been shown in this case.

The Supreme Court has emphasized that the <u>Daubert</u> factors are not a "definitive checklist or test" and that a trial court's inquiry into the reliability of evidence under Rule 702 is "a flexible one." <u>Daubert</u>, 509 U.S. at 593, 594. The Court expanded on this view in <u>Kumho Tire Co., Ltd., v. Carmichael</u>:

> We agree . . . that the factors identified in <u>Daubert</u> may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony. The conclusion, in our view, is that we can neither rule out, nor rule in, for all cases and for all time the applicability of the factors mentioned in <u>Daubert</u>, nor can we now do so for subsets of cases categorized by category of expert or by kind of evidence. Too much depends upon the particular circumstances of the particular case at issue.

<u>Kumho Tire</u>, 119 S. Ct. at 1175 (quotations and citation omitted). Finally, the Court emphasized in <u>Kumho</u> that

> the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable. That is to say, a trial court should consider the specific factors identified in <u>Daubert</u> where they are reasonable measures of the reliability of expert testimony.

<u>Id.</u> at 1176.

- 25 -

Based on the Supreme Court's decisions in <u>Daubert</u> and <u>Kumho Tire</u>, we conclude that the trial court did not abuse its discretion when it chose to admit expert testimony of Duane Kniebes concerning industry practice and the neutralization and oxidation theories. Kniebes had extensive scientific credentials and he was able to articulate a scientific process by which neutralization and oxidation occurs. The primary dispute was as to the application of these principles to the soil conditions prevailing in Cody, and that was largely a matter of cross-examination and impeachment. In addition, evidence of adherence to a practice within an industry implies a significant degree of reliability. Kniebes also testified on cross-examination during the <u>Daubert</u> hearing that he believed that the neutralization theory was not often discussed because the problem of alkaline soils was limited to specific areas of the country and that most of these areas have "solved their problem" by using thiophene. For the foregoing reasons, we conclude that the trial court did not abuse its discretion when it chose to admit the expert testimony of Duane Kniebes.

### IV. Wyoming Statute § 37-12-302

Citing the finding of the jury that U.S. West was 25% at fault for the accident, Energy West argues that U.S. West should have been held liable for all of the damages pursuant to Wyoming Statute § 37-12-302, and that

Energy West should be held liable for none of the damages. Section 37-12-302 requires persons who plan to excavate to inquire concerning the location of underground utilities before starting the excavation. See Wyo. Stat. Ann. § 37-12-302(b) (1998). The statute also provides that a person who fails to make this inquiry "and whose excavation causes injury or damage to an underground facility, shall be liable for all damages, including personal injury and property damages, caused by the excavation." Id. § 37-12-302(k). In short, Energy West claims that because the jury found U.S. West comparatively negligent, this statute precludes the Hynes from recovering damages from Energy West because U.S. West must be liable for "all" resulting damages.

Pursuant to Energy West's request, the jury was instructed on § 37-12-302(k). The record shows, however, that Energy West never argued before the district court that it could not be held liable for any portion of damages suffered by the Hynes if the jury found U.S. West partly liable. This court therefore deems the issue waived for purposes of appeal.[11] See

---

[11]Energy West cannot show plain error with respect to this issue. The Wyoming Supreme Court has stated that "[o]ur general rule is that retroactive legislation is not favored, and the statute will be construed prospectively unless there is clear evidence of a contrary legislative intent." Martinez v. City of Cheyenne, 791 P.2d 949, 957 (Wyo. 1990). Energy West presents no argument that this court should deviate from this rule. We therefore conclude that Energy
(continued...)

Walker v. Mather, 959 F.2d 894, 896 (10th Cir. 1992) (stating that a federal

appellate court generally does not consider an issue not passed upon

below).

## V. Excessive Damages

Energy West argues that the Hynes' damages award was excessive

and warrants reversal. We review a district court's disposition of a motion

for remittitur or new trial on damages for a manifest abuse of discretion.

Vining v. Enterprise Fin. Group, Inc., 148 F.3d 1206, 1216 (10th Cir.

1998). This court has explained that:

> In order to establish an abuse of discretion, the party that moved
> unsuccessfully for a new trial on the basis of an excessive verdict
> carries the heavy burden of demonstrating that the verdict was
> clearly, decidedly, or overwhelmingly against the weight of the
> evidence. In applying the abuse of discretion standard, we are also
> mindful that absent an award so excessive or inadequate as to shock
> the judicial conscience and to raise an irresistible inference that
> passion, prejudice, corruption or other improper cause invaded the
> trial, the jury's determination of the fact is considered inviolate.

---

[11](...continued)
West cannot obtain the benefit, if any, of § 302(k) because this subsection went
into effect on July 1, 1996, nearly four months after the explosion occurred. See
Act of March 28, 1996, ch. 113, § 5, 1996 Sess. Laws of Wyo. 376, 381 (codified
as amended at Wyo. Stat. Ann. § 37-7-302 (1998)). The previous version of the
statute, in § 302(f), only imposed liability for damages to the underground
facilities themselves, while the 1996 amendments expanded liability to include
personal injuries resulting from excavation work. Further, even if the revised
statute makes the excavator "liable for all damages," that is not to say that other
parties may not also be liable for the same damages or that the jury is not
authorized to apportion damages among various liable parties.

Campbell v. Bartlett, 975 F.2d 1569, 1577 (10th Cir. 1992) (citation and quotations omitted).

The jury awarded Randy Hynes $3,259,685.89 and Melissa Hynes $2,056,400.73 in compensatory damages. The jury found that Energy West did not act willfully and wantonly and the Hynes received no punitive damages award. Energy West argues that the court improperly denied Energy West's motions for remittitur and for a new trial on the issue of damages. Energy West claims that the damages award was excessive because it was not supported by substantial evidence and was the product of sympathy bias, passion, and prejudice.

At trial, the Hynes presented evidence that they have suffered emotionally and psychologically, that the treatment of their burn injuries was extremely painful, and that Mr. Hynes suffered significant scarring. In addition, the combined total of estimated economic loss and actual medical expenses was $358,064.79 for Ms. Hynes and $1,065,769.89 for Mr. Hynes.[12] Thus, the jury could have calculated damages for disfigurement, pain and suffering, and loss of enjoyment of life to be at least $1,698,335.94 in Ms. Hynes' case and $2,193,916 for Mr. Hynes. We find that the evidence presented at trial was sufficient to conclude that this jury

---

[12]The Hynes' economic expert valued Ms. Hynes' total economic losses at $344,500 and Mr. Hynes' economic losses at $957,700.

verdict, though large, was not so excessive that it fails to be supported by the evidence.

Energy West's argument that the punitive damages instruction created bias and prejudice on the part of the jury is unpersuasive because the jury, in its special verdict, specifically found that the defendant did not act willfully and wantonly. Thus, the jury verdict signifies that the jury did not find that Energy West's conduct warranted punitive damages. Moreover, the jury's finding that Energy West was liable for only 55% of the damages belies the claim that the jury was biased or prejudiced toward Energy West. In conclusion, we find that the trial court did not abuse its discretion in refusing to remit damages or grant a new trial for damages.

## CONCLUSION

In conclusion, we find that the a new trial is not warranted on grounds of improper jury instructions, improper comments by the district court to the jury, improper admission of expert testimony, improper application of Wyoming Statute § 37-12-302, or excessive damages. The Hynes presented sufficient, admissible evidence showing that Energy West acted negligently and that its negligence resulted in injury to the Hynes. Therefore, we AFFIRM the jury verdict finding that Energy West acted negligently and AFFIRM the jury verdict awarding damages to the Hynes.