**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

EDWARD JOHN NOSEWICZ,

    Plaintiff - Appellant,

v.

JEFFREY JANOSKO,

    Defendant - Appellee.

No. 20-1287
(D.C. No. 1:16-CV-00447-PAB-KLM)
(D. Colo.)

_____

**ORDER AND JUDGMENT***
_____

Before **MATHESON**, **MORITZ**, and **CARSON**, Circuit Judges.
_____

The Adams County Sheriff's Office ("ACSO") arrested and jailed Edward

Nosewicz. Early the next morning, Mr. Nosewicz started screaming in his cell. Deputy

Jeffrey Janosko unsuccessfully tried to calm Mr. Nosewicz, then attempted to escort him

to a "cool down" cell. Mr. Nosewicz resisted, and Deputy Janosko took him to the

ground.

---

    * This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Mr. Nosewicz sued Deputy Janosko in federal district court. The case was tried on his 42 U.S.C. § 1983 claim for excessive force in violation of the Fourteenth Amendment.[1] The jury decided for Deputy Janosko.

Mr. Nosewicz moved for a new trial. First, he argued the evidence was insufficient to support the jury's verdict. Second, he relied on inconsistent testimony from Deputy Janosko and his shift supervisor, Sergeant Robert Hannah, to argue that one of them gave false or perjurious testimony. The court denied the motion.

Mr. Nosewicz appeals, raising the same arguments. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. TRIAL EVIDENCE

Deputy Janosko testified that he first spoke to Mr. Nosewicz during the evening on December 5, 2014. Mr. Nosewicz was "irate and upset." App. at 1857. At around 4 a.m. the next morning, Mr. Nosewicz started screaming about needing medical care. Deputy Janosko and Sergeant Kenny Sherman, his use-of-force expert, both testified that Mr. Nosewicz's screaming risked waking other inmates and causing a dangerous disruption.

Deputy Janosko said he approached Mr. Nosewicz's cell and asked the control tower to open the door remotely. He talked with Mr. Nosewicz to determine what was wrong and to calm him down. In response, Mr. Nosewicz swore at him. When Deputy

---

[1] Mr. Nosewicz originally brought claims for excessive force and deliberate indifference to his medical needs. In a previous appeal, we affirmed summary judgment on the deliberate indifference claim but permitted Mr. Nosewicz to try the excessive force claim to a jury. *Nosewicz v. Janosko*, 754 F. App'x 725, 735 (10th Cir. 2018) (unpublished).

2

Janosko said he did not appreciate this disrespectful language, Mr. Nosewicz swore at him again.

Deputy Janosko said he ordered Mr. Nosewicz to exit his cell to be transferred to a "cool down" cell. Mr. Nosewicz refused. When Deputy Janosko walked into the cell, Mr. Nosewicz yelled he could not enter. Deputy Janosko grasped Mr. Nosewicz's right arm and positioned himself behind Mr. Nosewicz in an "escort position." *See id.* at 1867, 1869, 1890-91, 1893. Mr. Nosewicz pulled his right arm away and continued yelling. Deputy Janosko ordered him to stop resisting.

Deputy Janosko testified that Mr. Nosewicz kept trying to pull away and then spun rightward toward Deputy Janosko so they were facing each other. From that position, Mr. Nosewicz could have hit Deputy Janosko with his unrestrained left arm. Deputy Janosko used an arm-bar maneuver to take Mr. Nosewicz to the ground. Other officers arrived and helped Deputy Janosko restrain Mr. Nosewicz.[2]

Sergeant Sherman testified about reasonable use of force under ACSO policies. He characterized Mr. Nosewicz's pulling his right arm away as "defensive resistance" because "he [was] not striking or hurting the officer." *Id.* at 1921. He testified that when Mr. Nosewicz spun toward Deputy Janosko, his "defensive resistance" escalated into "active aggression." *Id.* at 1922-23. Sergeant Sherman opined that under ACSO policies, Deputy Janosko could have responded to Mr. Nosewicz's "active aggression"

---

[2] A camera in the module captured video of the incident from outside Mr. Nosewicz's cell. The parties did not provide this footage on appeal.

with considerable force and that his choice of an arm-bar takedown was "at the very low end" of the types of force he could have applied. *Id.* at 1923-24.

Sergeant Sherman stated that an ACSO manual recommended that a knee strike precede an arm-bar takedown. He explained that by not striking Mr. Nosewicz before taking him down, Deputy Janosko avoided "escalating any further" the amount of force he applied. *Id.* at 1933. In conclusion, Sergeant Sherman opined that Deputy Janosko's use of force was "appropriate and reasonable," and not "excessive or inappropriate." *Id.* at 1940-41.

Mr. Nosewicz gave a different account. He testified that during his arrest, officers slammed his torso and head into the ground, causing pain. He said the arresting officers also scratched his face and caused his wrists to bleed. Mr. Nosewicz testified that in the afternoon before the incident, Deputy Janosko verbally antagonized him. Before his early-morning encounter with Deputy Janosko, he had awakened with chest pain and believed he had broken a rib or was having a heart attack. He said that during the encounter, Deputy Janosko placed him in a chokehold, slammed his head into the cinderblock wall, and beat him. At some point during this incident, he lost consciousness.

Mr. Nosewicz also presented testimony from physicians Dr. Julianna Batizy-Morley and Dr. Stephanie Chiu. They said he suffered a rib fracture, a possible heart attack, head swelling, a laceration on his elbow, bruising, and self-reported pain in his wrist, elbow, and chest around the time of this encounter. Both Mr. Nosewicz and Dr.

4

Mark Engelstad, Mr. Nosewicz's family medicine doctor, testified that Mr. Nosewicz had developed heart conditions well before his arrest and detention in December 2014.[3]

## II. DISCUSSION

Fed. R. Civ. P. 59(a)(1)(A) provides: "The court may, on motion, grant a new trial on all or some of the issues—and to any party— . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court."

"A motion for a new trial is generally not regarded with favor, and is granted only with great caution." *United States v. Perea*, 458 F.2d 535, 536 (10th Cir. 1972). "Courts do not grant new trials unless it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done, and the burden of showing harmful error rests on the party seeking the new trial." 11 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2803 (3d ed. Apr. 2021 update) [hereinafter Wright & Miller] (footnote omitted).

We review the denial of a new trial motion for an abuse of discretion. *Burke v. Regalado*, 935 F.3d 960, 1026 (10th Cir. 2019). "A district court abuses its discretion if it made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *Id.* (quotations omitted). "A district court's decision crosses the abuse-

---

[3] In addition to the testimony described above, Deputy Janosko presented testimony from Mr. Nosewicz's wife and the jail nurse who handled Mr. Nosewicz's intake. Mr. Nosewicz presented testimony from Sergeant Gregory Blevens about Mr. Nosewicz's arrest, initial processing, and transport to the jail. Mr. Nosewicz testified that before the incident with Deputy Janosko, jail staff, including Deputy Janosko, denied him medical care. This testimony does not affect our analysis.

of-discretion line if it rests on an erroneous legal conclusion or lacks a rational basis in the record." *Harmon v. City of Norman, Okla.*, 981 F.3d 1141, 1146 (10th Cir. 2020) (quotations omitted).

## A. *Insufficient Evidence*

### 1. **Legal Background**

#### a. *New trial motions based on insufficient evidence*

"In deciding a new trial motion based on insufficiency of the evidence, a district court must analyze whether the verdict is clearly, decidedly or overwhelmingly against the weight of the evidence." *Elm Ridge Expl. Co., LLC v. Engle*, 721 F.3d 1199, 1216 (10th Cir. 2013) (quotations omitted). We "view[] all the evidence in the light most favorable to the prevailing party." *Escue v. N. Okla. Coll.*, 450 F.3d 1146, 1156 (10th Cir. 2006).

#### b. *Excessive force claims by pretrial detainees*

The Fourteenth Amendment governs excessive force claims by pretrial detainees. *See Rowell v. Bd. of Cnty. Comm'rs of Muskogee Cnty.*, 978 F.3d 1165, 1171 (10th Cir. 2020). "A defendant violates the Fourteenth Amendment by purposely or knowingly using force against a pretrial detainee that is 'objectively unreasonable.'" *Id.* (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015)). "Objective unreasonableness . . . turns on the 'facts and circumstances of each particular case.'" *Id.* (quoting *Kingsley*, 576 U.S. at 397). A jury must "make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Kingsley*, 576 U.S. at 397. The Supreme Court in *Kingsley*

6

identified six non-exclusive factors to determine whether an officer's use of force was objectively reasonable. We list these factors as we apply them below.[4]

## 2. Application of the Kingsley Factors

Under the *Kingsley* factors, a reasonable jury had sufficient evidence to find Deputy Janosko's conduct was objectively reasonable under the Fourth Amendment.

| *Kingsley* Factor | A Reasonable Jury Could Have Found |
|---|---|
| 1. "[T]he relationship between the need for the use of force and the amount of force used," *Kingsley*, 576 U.S. at 397. | Deputy Janosko used reasonable force given Mr. Nosewicz's conduct. |
| 2. "[T]he extent of the plaintiff's injury." *Id.* | Mr. Nosewicz's injuries preceded his encounter with Deputy Janosko. |
| 3. "[A]ny effort made by the officer to temper or to limit the amount of force." *Id.* | Deputy Janosko exercised restraint by attempting to calm Mr. Nosewicz before entering his cell and choosing not to strike Mr. Nosewicz before the arm-bar takedown. |
| 4. "[T]he severity of the security problem at issue." *Id.* | Mr. Nosewicz's screaming risked causing a dangerous disruption in the module and that his spinning toward Deputy Janosko presented a safety risk. |
| 5. "[T]he threat reasonably perceived by the officer." *Id.* | Someone in Deputy Janosko's position would have viewed Mr. Nosewicz as posing a threat of physical assault. |
| 6. "[W]hether the plaintiff was actively resisting." *Id.* | Mr. Nosewicz actively resisted when he spun toward Deputy Janosko. |

---

[4] There is no dispute that the district court properly instructed the jury as to the *Kingsley* factors.

The jury had ample evidence to find that every *Kingsley* factor favored Deputy Janosko and that his use of force was thus objectively reasonable. The district court thus did not abuse its discretion when it denied Mr. Nosewicz's motion for a new trial based on insufficient evidence.[5]

## B. *False or Perjured Testimony*

We reject Mr. Nosewicz's argument that a new trial is warranted because Deputy Janosko or Sergeant Hannah testified falsely or perjuriously.

### 1. **Procedural History**

Mr. Nosewicz's theory of false or perjured testimony is based on an inconsistency between Deputy Janosko's testimony about what happened before he took Mr. Nosewicz to the ground, and Sergeant Hannah's testimony about what Deputy Janosko orally reported to him after the incident. This inconsistency became apparent during pretrial discovery.

#### a. *Depositions and incident report*

Mr. Nosewicz deposed Deputy Janosko and Sergeant Hannah. Sergeant Hannah testified that Deputy Janosko orally reported to him that Mr. Nosewicz had "balled his

---

[5] Mr. Nosewicz's other arguments for insufficient evidence are unavailing. First, he argues the district court mischaracterized the record by stating that Deputy Janosko used an arm-bar takedown because Mr. Nosewicz tried to pull his arm away and turned toward Deputy Janosko. Aplt. Br. at 43-48. But the record supports this view. Second, he argues the court should not have credited Deputy Janosko's testimony that he was worried Mr. Nosewicz would hit him. *Id.* at 48-53. But this testimony is irrelevant to our analysis because the excessive-force inquiry under *Kingsley* does not concern Deputy Janosko's subjective fears. *See Kingsley*, 576 U.S. at 395 ("[T]he relevant standard is objective not subjective.").

8

fists up" and taken "a step toward him." App. at 1568. By contrast, when Mr. Nosewicz asked Deputy Janosko to "[d]escribe [the incident] in detail," Deputy Janosko did not mention that Mr. Nosewicz had balled up his fists and taken a step toward him. *Id.* at 1574-75.

Also, Deputy Janosko produced an "Incident/Investigation Report" to Mr. Nosewicz. In the report, Deputy Janosko did not say Mr. Nosewicz had balled up his fists and taken a forward step.

### b. *Montgomery expert report and motion in limine*

One of Mr. Nosewicz's experts, Dan Montgomery, identified the inconsistency between Sergeant Hannah's and Deputy Janosko's testimony in his report. Mr. Montgomery said "[t]his disconnect [was] disturbing." App. at 930. He also opined that Sergeant Hannah should have investigated Deputy Janosko's use of force on Mr. Nosewicz. Deputy Janosko moved in limine to exclude Mr. Montgomery's opinions, Mr. Nosewicz opposed the motion, and the district court granted exclusion. *Id.* at 912-14, 1073-75, 1134.[6]

### c. *Trial testimony*

Mr. Nosewicz called Deputy Janosko and Sergeant Hannah as trial witnesses to elicit their inconsistent testimony. Aplt. Br. at 7-9. Both repeated their deposition testimony. Sergeant Hannah said Deputy Janosko orally reported that Mr. Nosewicz had

---

[6] Although the district court held that some of Mr. Montgomery's other opinions were admissible, he ultimately did not testify at trial, and his expert report was not published to the jury.

balled up his fists and taken a forward step. Deputy Janosko testified he did not make such a report. And Deputy Janosko also said Mr. Nosewicz did not, in fact, ball up his fists and take a forward step.

2. **Analysis**

We address Mr. Nosewicz's false testimony and perjurious testimony arguments in turn.

a. *False testimony*

i. Additional legal standards

The legal test for whether false testimony warrants setting aside a jury verdict and holding a new trial depends on when a party discovers falsity.

1) Before trial

A party who discovers false testimony before trial has several options. For example, the party can move in limine to exclude the false testimony, present evidence of falsity to the jury to impeach the witness, or—if the party discovers falsity on the eve of trial—move for a continuance or for additional discovery. But Mr. Nosewicz offers no authority that this circumstance justifies a new trial in his case.[7]

---

[7] Mr. Nosewicz could have argued that although he knew about the inconsistent testimony before the trial, the testimony caused a miscarriage of justice that justifies a new trial. *McHargue v. Stokes Div. of Pennwalt Corp.*, 912 F.2d 394, 396 (10th Cir. 1990) (A district judge "has the obligation or duty to ensure that justice is done, and, when justice so requires, he has the authority to set aside the jury's verdict."). But he has not made such a showing.

2) During trial

A party who discovers false testimony during trial can seek a new trial by "show[ing] surprise, prejudice, and an attempt [during trial] to cure the prejudice such as a motion for a continuance." *Hynes v. Energy W., Inc.*, 211 F.3d 1193, 1203 (10th Cir. 2000) (quotations and alteration omitted).

3) After trial

A party who discovers falsity after trial may invoke our five-part standard for a new trial. When addressing such a motion, "the trial court must first be satisfied that the challenged testimony was actually false." *United States v. Bradshaw*, 787 F.2d 1385, 1391 (10th Cir. 1986). The party also must meet the following five requirements:

> (1) the evidence [showing falsity] was discovered after trial;
> (2) the failure to learn of the evidence was not caused by [the movant's] own lack of diligence; (3) the new evidence is not merely impeaching; (4) the new evidence is material to the principal issues involved; and (5) the new evidence is of such a nature that in a new trial it would probably produce [a different result].

*United States v. Miller*, 987 F.2d 1462, 1466 (10th Cir. 1993).

ii. Analysis

This case falls into the first category—when a party discovers false testimony before trial. The discovery record conclusively shows Mr. Nosewicz knew well before trial about the inconsistency between Deputy Janosko's and Sergeant Hannah's testimony. As the district court observed, Mr. Nosewicz's argument that he was surprised by the inconsistency "strains credulity." App. at 1609. We see no abuse of

11

discretion by the district court and thus affirm the denial of the new trial motion based on false testimony.

      b.  *Perjurious testimony*

Mr. Nosewicz also argues that Deputy Janosko or Sergeant Hannah committed perjury, warranting a new trial.[8] But he has identified no evidence that either committed perjury, i.e., "*knowingly* ma[de] a false material statement that has the tendency to mislead." *United States v. Hernandez*, 94 F.3d 606, 611 (10th Cir. 1996) (emphasis added). We have emphasized that "witnesses frequently disagree in their interpretation and recollection of events, and . . . tension between witnesses' testimony does not prove subornation of perjury" or perjury. *United States v. Henderson*, 179 F. App'x 535, 540 (10th Cir. 2006) (unpublished);[9] *see also Tapia v. Tansy*, 926 F.2d 1554, 1563 (10th Cir. 1991) ("Contradictions and changes in a witness's testimony alone do not constitute perjury and do not create an inference, let alone prove, that the prosecution knowingly presented perjured testimony."). The single inconsistency between Deputy Janosko's and

---

[8] We address this argument separately because two infrequently cited Tenth Circuit opinions, *Hunter v. Thomas*, 173 F.2d 810, 812 (10th Cir. 1949), and *Motive Parts Warehouse v. Faucet Enterprises*, 774 F.2d 380, 391 (10th Cir. 1985), arguably recognize a distinct legal standard for new trial motions based on perjurious, as opposed to merely false, testimony. We take no position on whether there is such a distinct legal standard.

[9] Although not precedential, we find the reasoning of this unpublished opinion instructive. *See* 10th Cir. R. 32.1 ("Unpublished decisions are not precedential, but may be cited for their persuasive value."); *see also* Fed. R. App. P. 32.1.

12

Sergeant Hannah's testimony does not establish that either made a knowing false statement.[10]

                    *   *   *   *

For these reasons, we affirm the district court's denial of Mr. Nosewicz's new trial motion based on false or perjurious testimony.

### III. **CONCLUSION**

We affirm the district court's denial of Mr. Nosewicz's motion for a new trial.

                              Entered for the Court


                              Scott M. Matheson, Jr.
                              Circuit Judge

---

[10] We also reject Mr. Nosewicz's argument that the court should have held an evidentiary hearing about Deputy Janosko and Sergeant Hannah's testimony. Mr. Nosewicz cites only the Fourth Circuit's decision in *Phillips v. Crown Central Petroleum Corp.*, 556 F.2d 702 (4th Cir. 1977), to argue a hearing was needed "to determine the extent to which the verdict was based on false or perjurious testimony." Aplt. Br. at 41. In *Phillips*, one of the plaintiffs—a key witness—admitted after trial to having "committed perjury . . . with respect to issues central to the litigation." 556 F.3d at 703. The district court did not look into the extent of the perjury and decided to "continue to credit" the plaintiff's trial testimony. *Id.* The Fourth Circuit held this was error because, given the plaintiff's admission, a hearing was needed to determine the extent of the perjury. *Id.* at 705. By contrast, Mr. Nosewicz has not given any basis to infer that Deputy Janosko or Sergeant Hannah committed perjury. Mr. Nosewicz therefore has not shown the district court abused its discretion by declining to hold an evidentiary hearing.