Debra BECK, Plaintiff-Appellee,

v.

QUIKTRIP CORPORATION, Defendant-Appellant.

No. 82–1273.

United States Court of Appeals, Tenth Circuit.

June 2, 1983.

Jim Lawing, Wichita, Kan., for plaintiff-appellee.

Thomas D. Robertson of Nichols & Wolfe, Inc., Tulsa, Okl., for defendant-appellant.

Before BARRETT, DOYLE and McKAY, Circuit Judges.

BARRETT, Circuit Judge.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed.R. App.P. 34(a); Tenth Circuit R. 10(e). The cause is therefore ordered submitted without oral argument.

Debra Beck brought a Title VII sex discrimination action under 42 U.S.C. § 2000e *et seq.* (1976), against QuikTrip Corporation (QuikTrip). The United States District Court for the District of Kansas entered judgment in favor of Beck. QuikTrip now appeals from that judgment.

QuikTrip operates convenience stores in several states, including Kansas. Beck was employed by QuikTrip at various locations in Wichita, Kansas. On March 13, 1979, Beck entered QuikTrip's Manager Training Program. In late April of 1979, Beck became aware that she was pregnant and on April 24 she informed her manager and trainer, Bruce Lang, of her condition. On April 27 she was told that she was being removed from the training program, but that she would retain her former position of first assistant manager.

Beck remained in that position until the middle of May. On May 14, 1979, Beck was scheduled to work a shift beginning at 2:00 p.m. At approximately 8:00 a.m., however, she called the office of her area supervisor, George Brumback, to inform him that because her son was sick and needed to see a doctor, she would be unable to work that day. Brumback was not in the office, but the telephone receptionist assured Beck that she would relay the message to him. Beck did not call her store manager, Roy Brockmeier. Brumback received the mes-

sage and informed Brockmeier that Beck would not be at work on time. Brumback then asked Brockmeier to call Beck to ask her if she could work part of her shift and why she had not called Brockmeier. Brockmeier called her and first inquired why she had failed to call him. After an apparently heated exchange, Beck said to Brockmeier: "Well, who do you think you are, God?" Brockmeier then hung up the phone.

On May 17 Beck met with Brockmeier and Brumback at the store at which she had been working. At the end of the conference Brumback informed Beck that she was fired. The following reasons and explanations were stated on her notice of discharge: (1) absenteeism, i.e., "Absenteeism and taking off early"; (2) misconduct, i.e., "Being abusive with Manager"; (3) lack of cooperation, i.e., "failing to call Manager when missing work"; (4) attitude, i.e., "Verbal disrespect to Manager."

Beck later brought this action in which she alleged that QuikTrip removed her from the training program and discharged her because of her pregnant condition. Beck presented evidence that although she was learning slowly, she was qualified to remain in the training program at the time of her removal. QuikTrip's evidence indicated that she was not making satisfactory progress at that time. Beck also presented evidence that her manager and supervisor considered her pregnancy to create problems.

With respect to the discharge, QuikTrip's evidence emphasized Beck's insubordination and failure to follow company procedures as valid grounds for dismissal. Beck, however, testified that she followed an appropriate procedure, that her retort to Brockmeier, though rash, was the product of a heated exchange in which both parties participated, that she apologized to Brockmeier when requested to do so, and that although other employees had received written warnings of unsatisfactory conduct before they were discharged, she received no such notice.

The trial court accepted Beck's version of the incidents leading to her removal and

discharge. Thus, after setting out detailed findings of fact, the court concluded that Beck had presented a prima facie case of sex discrimination, QuikTrip had rebutted that case by articulating legitimate, nondiscriminatory reasons for its actions, but that Beck had fulfilled her burden of showing that the proffered reasons were mere pretexts for discrimination. On appeal, QuikTrip contends that the trial court erred in admitting certain statistical evidence, in essentially shifting the burden of persuasion to QuikTrip, and in preparing preliminary findings of fact before all of QuikTrip's evidence had been presented.

The statistical evidence which QuikTrip contends was erroneously admitted consisted of statistics showing the percentage of females employed in the general sales field in the Wichita area and Equal Employment Opportunity Commission reports which indicate the composition of an employer's work force during a particular pay period within a calendar year. QuikTrip objected to the statistics on the grounds of relevancy in that they had no bearing on the issue of how the company treated pregnant women, and the general labor population provided an inappropriate body for comparison.

■ Statistics relating to an employer's employment practices can be helpful and relevant evidence in a disparate treatment case, even when the claim of discrimination is asserted by an individual employee. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 805, 93 S.Ct. 1817, 1825, 36 L.Ed.2d 668 (1973); *Mohammed v. Callaway,* 698 F.2d 395, 399 (10th Cir.1983); *Bauer v. Bailar,* 647 F.2d 1037, 1045 (10th Cir.1981). Such statistics can be used to establish a prima facie case of employment discrimination, *Weahkee v. Norton,* 621 F.2d 1080, 1083 (10th Cir.1980), and to establish that an employer's stated reasons for its action are pretexts for discrimination. *Mohammed, supra,* 698 F.2d at 399; *Anderson v. City of Albuquerque,* 690 F.2d 796, 802 (10th Cir. 1982).

■ It is true that such statistical evidence should be closely related to the issues

in the case, and that its value will depend on the surrounding facts and circumstances. *Bauer, supra,* 647 F.2d at 1045. Nevertheless, statistical evidence which alone might be insufficient to establish a prima facie case of discrimination or to discredit an employer's proffered reason for its action is not necessarily irrelevant. *Fitzgerald v. Sirloin Stockade, Inc.,* 624 F.2d 945, 954–55 (10th Cir.1980). *See also McDonnell Douglas, supra,* 411 U.S. at 805 n. 19, 93 S.Ct. at 1825 n. 19. The determination of whether proffered evidence is relevant is a matter committed to the discretion of the trial court. *Wilson v. St. Louis-San Francisco Railway Co.,* 673 F.2d 1152, 1155 (10th Cir. 1982). On appeal, we will not disturb the trial court's determination absent a showing of a clear abuse of discretion. *Texas Eastern Transmission Corp. v. Marine Office-Appleton & Cox Corp.,* 579 F.2d 561, 566 (10th Cir.1978); *Keen v. Detroit Deisel Allison,* 569 F.2d 547, 549 (10th Cir.1978). The statistical evidence here had little bearing on the issue of whether Beck was removed from the training program because she was pregnant; however, we are not prepared to say that it was irrelevant and should have been excluded. There was no abuse of discretion in admitting the statistics.

QuikTrip also contends that the trial court substituted its own judgment for the business judgment of the company. As a result, QuikTrip argues, the court effectively shifted the burden of persuasion to the company to prove that it did not discriminate against Beck in discharging her.

■ QuikTrip is correct in arguing that after Beck established a prima facie case of discrimination the company's burden was met when it articulated a legitimate, nondiscriminatory reason for her discharge; Beck retained the burden of persuading the court that the proffered reasons were pretextual and that she was in fact the victim of intentional discrimination. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981); *Whatley v. Skaggs Co.,* 707 F.2d 1129 (10th Cir.1983); *Montgomery v. Yellow Freight System, Inc.,* 671 F.2d 412, 413 (10th Cir.1982). Beck could meet that burden "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine, supra,* 450 U.S. at 256, 101 S.Ct. at 1095.

■ In the instant case, the trial court concluded that the reasons given for Beck's discharge were insubstantial and unreasonable, and therefore Beck had indirectly met her burden of persuasion under *Burdine.* QuikTrip's argument that the court shifted the burden of persuasion obscures the relatively straightforward duty of the trial court: "In short, the district court must decide which party's explanation of the employer's motivation it believes." *United States Postal Service Board of Governors v. Aikens,* —— U.S. ——, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983). That the trial court believed Beck's explanation of QuikTrip's motivation for her discharge does not mean that it improperly substituted its business judgment for QuikTrip's or erroneously shifted the burden of persuasion. *Id.*

Our inquiry, therefore, is limited to determining whether the trial court's finding that QuikTrip's stated reasons for discharging Beck were pretexts for discrimination was clearly erroneous. Fed.R.Civ.P. 52(a); *Pullman-Standard v. Swint,* 456 U.S. 273, 287–90, 102 S.Ct. 1781, 1789–91, 72 L.Ed.2d 66 (1982); *Whatley, supra,* at 1136; *Mortensen v. Callaway,* 672 F.2d 822, 823 (10th Cir.1982). Trial court findings are not clearly erroneous unless, after reviewing the record as a whole, we are definitely and firmly convinced that a mistake has been made. *Burrus v. United Telephone Co. of Kansas,* 683 F.2d 339, 342–43 (10th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 491, 74 L.Ed.2d 633 (1982). Whether this court would reach the same conclusion on the evidence presented is immaterial. *Hartzell v. United States,* 539 F.2d 65, 68 (10th Cir. 1976). We have reviewed the entire record in this case and, although the evidence is sharply conflicting on many points, we are not convinced that the trial court was mistaken in its findings. Substantial evidence supports the trial court's conclusion that

Beck was discharged because she was pregnant.

Finally, QuikTrip argues that the trial court's findings were erroneous in several respects and that the trial court wrote its decision before the close of QuikTrip's evidence. The discrepancies in the findings to which QuikTrip points are minor, *see Nulf v. International Paper Co.*, 656 F.2d 553, 561 (10th Cir.1981), and we have already concluded that the findings are not clearly erroneous.[1] The manner in which the court rendered its decision, however, was unusual and merits some discussion.

■ The trial in this case commenced on October 15, 1981. Beck presented her case-in-chief and QuikTrip put on several witnesses on October 15 and 16. The court then stood in recess until October 22, when QuikTrip completed the presentation of its evidence, in particular, the testimony of Brumback and Brockmeier. After closing arguments were heard, the court rendered a preliminary decision from the bench. With perhaps unfortunate candor, the trial court concluded its remarks by stating:

> Now, as I listened to you today, as I indicated, having given some reflection, nothing changed from what I heard today, and having had occasion to pull together my own trial notes and tracking the testimony and looking at the exhibits, I dictated the past two days what it is I have just read. It may need polishing for the purpose of a formal order, but I felt it best to tell you now rather than wait and receive some kind of cold, hard finding in the mail. When I practiced law I much preferred the Judge to tell me from the bench what he was going to do.

[R., Vol. VII, p. 573–74]. On November 6, 1981, the court filed its formal memorandum and order.

Since the trial court admitted to preparing findings before all of QuikTrip's evidence was presented, the company argues

that it was denied due process of law. The court's action was unusual; however, we believe that QuikTrip received a fair trial in accordance with due process.

As a rule, "all competent and material evidence must be received and considered by the court before final decision." *Frank Adam Electric Co. v. Westinghouse Electric & Mfg. Co.*, 146 F.2d 165, 168 (8th Cir.1945). Although the judge admitted that he prepared tentative findings before hearing the testimony of all of QuikTrip's witnesses, nothing in the record as a whole indicates that the trial judge did not consider their testimony. We believe that no final decision was reached until all the relevant evidence had been heard and considered.

The ultimate test of procedural due process is whether the trial was conducted with "fundamental fairness". *Watson v. Patterson*, 358 F.2d 297, 298 (10th Cir.), *cert. denied*, 385 U.S. 876, 87 S.Ct. 153, 17 L.Ed.2d 103 (1966). While we readily appreciate and understand QuikTrip's concerns here, we are of the view that the trial was conducted with fundamental fairness. That the judge utilized a long break in the trial to prepare tentative findings, an effort he mistakenly thought the parties would appreciate, did not render the trial unfair. The judge heard all of the evidence and specifically referred to the testimony in question in his memorandum and order.

In cases such as the one before us, critical findings turn on whether the judge believes the plaintiff's or defendant's version of an incident. If the judge believes the evidence presented by the plaintiff, we can only require that he or she still hear and consider the defendant's evidence. If the judge remains willing to change his or her mind, and we are convinced the judge did so here, that he or she initially believes or disbelieves one party's version of an incident does not deny due process. Because the appearance of justice also is important, we do not encourage the practice followed in

---

1. We note, however, that although the findings of fact here are adequate, it would have been helpful had the trial court addressed the testimony of some seven female QuikTrip employees concerning the fair treatment they received from the company during their pregnancies.

That testimony does not eliminate the possibility that QuikTrip discharged Beck because she was pregnant, *see Whatley, supra*, at 1136, but its omission from the findings of fact did hamper our review.

this case. Nevertheless, we are convinced that the judge's action—or perhaps his frankness in admitting to his action—did not deny QuikTrip a fair trial.

AFFIRMED.