**John BEACHAM, Plaintiff-Appellee,**

v.

**LEE–NORSE and Ingersoll-Rand; and Does I through V, Inclusive, Defendants-Appellants.**

No. 81–1920.

United States Court of Appeals, Tenth Circuit.

July 14, 1983.

Rehearing Denied Aug. 26, 1983.

Jackson Howard, Provo, Utah (Richard B. Johnson, Provo, Utah, with him on the brief) of Howard, Lewis & Petersen, Provo, Utah, for plaintiff-appellee.

Peter Stirba, Salt Lake City, Utah (William T. Thurman, Salt Lake City, Utah, with him on the brief) of McKay, Burton, Thurman & Condie, Salt Lake City, Utah, for defendants-appellants.

Before McWILLIAMS and BARRETT, Circuit Judges, and BRATTON, District Judge.*

BARRETT, Circuit Judge.

In this diversity case Lee-Norse and Ingersoll-Rand appeal from a jury verdict finding them strictly liable for injuries suffered by John Beacham.

Lee-Norse is a wholly owned subsidiary of Ingersoll-Rand which manufactures and sells coal mining machinery. The machine involved in this case was a roof bolter designed and manufactured by Lee-Norse and sold to the Braztah Mining Company. The roof bolter was used in Braztah's underground coal mine in Helper, Utah. The function of the roof bolter was to drill holes into the ceiling of the mine, and then to install six-foot long bolts through steel mats which prevent cave-ins during mining operations. The roof bolter had two sets of arms which moved independently of each other during the operation of the machine. The support arm assembly held a canopy against the ceiling to protect the machine operator from falling debris. Another set of arms supported the drill boom. As the machine was operated, the drill boom and the canopy would be elevated and lowered numerous times. This independent motion created a "pinch point" between the canopy support arm and the drill boom arm. There was no form of guard shielding the pinch point on the roof bolter in question when it was sold or at the time of the accident, although Braztah at one time apparently added a guard which the miners removed.

John Beacham was an employee at the mine in Helper. On November 9, 1979, he was working with the roof bolter with a fellow employee, Joseph Silva. Silva was the operator of the machine and Beacham was his helper. Silva would run the drill and insert the bolts, while Beacham would place and steady the steel mats. Silva and Beacham were using the bolter in an area where the ceiling of the mine was approximately ten feet high. The bolter in question was capable of extending only about eight and one-half feet high. Thus, the bolter was elevated in front by wooden crib blocks. In order to perform his job, Beacham also stood on a 10″ × 10″ × 36″ crib block. The floor of the mine was uneven and covered by approximately one foot of water with oil mixed in it.

At the time of the accident, Beacham had been either steadying or repositioning a steel mat. To do so, he had to stand on the crib block about two feet away from the roof bolter on the opposite side of the ma-

---

* Chief Judge of the United States District Court for the District of New Mexico, sitting by designation.

chine from Silva. Somehow, Beacham slipped or lost his balance and fell from the block toward the bolter. In order to break his fall, he instinctively reached out and grabbed the canopy support arm. At the same time, Silva was lowering the drill boom and the canopy. Beacham's right hand became caught in the pinch point and four fingers were severed.

Beacham brought this action in the United States District Court for the District of Utah. The case was tried before a jury solely on the theory of strict products liability. At trial Lee-Norse attempted to present evidence supporting its affirmative defenses of assumption of risk and misuse and the statutory defense of alteration. The trial court ruled that the evidence was irrelevant and therefore inadmissible. The court then ruled that as a matter of law the defenses were insufficient to go to the jury and refused to instruct on them. The sole issue before the jury, therefore, was whether the bolter was unreasonably dangerous. The jury concluded that it was and awarded Beacham $407,820.83 in damages. On appeal, Lee-Norse contends that the trial court erred in its evidentiary rulings, in its ruling that Lee-Norse's defenses were insufficient to go to the jury, and in its refusal to instruct on the defenses.

Utah first definitively adopted strict products liability in 1979 in the case of *Ernest W. Hahn, Inc. v. Armco Steel Co.,* 601 P.2d 152 (Utah 1979). In that case, the Utah Supreme Court adopted the doctrine of strict products liability as described in § 402A of the Restatement (Second) of Torts.[1] *Hahn, supra,* 601 P.2d at 158. The court also held that there are two affirmative defenses to strict products liability: (1) misuse of the product by the user or consumer; and (2) "knowledge of the defect by the user or consumer, who is aware of the danger and yet unreasonably proceeds to make use of the product, i.e., assumption of risk." *Id.* at 158. The court referred to comments g[2] and n[3] of section 402A to illustrate the two defenses. Since the defendant in *Hahn* could not claim either defense, the court refused to reach the issue of whether comparative principles would apply, or whether the defenses would bar recovery completely. It is clear, therefore, that the Utah Supreme Court intended to limit severely the defenses to strict products liability; common contributory negligence by the user which does not rise to the level of misuse or assumption of risk is no defense and in no way affects his or her recovery. *Contra Caterpillar Tractor Co. v. Beck,* 593 P.2d 871, 889 n. 59 (Alaska 1979).

1. That section provides:
 (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
 (a) the seller is engaged in the business of selling such a product, and
 (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
 (2) The rule stated in Subsection (1) applies although
 (a) the seller has exercised all possible care in the preparation and sale of his product, and
 (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.
 Restatement (Second) of Torts § 402A (1965).

2. Comment g, Restatement (Second) of Torts § 402A (1965), provides in pertinent part: "The seller is not liable when he delivers the product

in a safe condition, and subsequent mishandling or other causes make it harmful by the time it is consumed."

3. The relevant part of Comment n, Restatement (Second) of Torts § 402A (1965), provides:
 Contributory negligence of the plaintiff is not a defense when such negligence consists merely in a failure to discover the defect in the product, or to guard against the possibility of its existence. On the other hand the form of contributory negligence which consists in voluntarily and unreasonably proceeding to encounter a known danger, and commonly passes under the name of assumption of risk, is a defense under this Section as in other cases of strict liability. If the user or consumer discovers the defect and is aware of the danger, and nevertheless proceeds unreasonably to make use of the product and is injured by it, he is barred from recovery.

The Utah Supreme Court further defined the doctrine of strict products liability in *Mulherin v. Ingersoll-Rand Co.,* 628 P.2d 1301 (Utah 1981). The court reaffirmed that misuse and "unreasonable use of the product despite knowledge of the defect and awareness of the danger" [4] are affirmative defenses. *Id.* at 1302–03. The court also answered the question reserved in *Hahn* by holding that principles of comparative fault would apply to the affirmative defenses of misuse and unreasonable use. *Id.* at 1303–04. Finally, since the defect in the product was one of design rather than manufacture, the court implicitly approved of the application of strict products liability to design defects. *Id.* at 1302.

In this case, Beacham argued that the roof bolter was unreasonably dangerous by reason of a defect in design: the lack of a guard shielding the pinch point. Lee-Norse contended that the bolter was not unreasonably dangerous, and also raised the affirmative defenses of misuse and unreasonable use. Beacham objected to the testimony of several of Lee-Norse's witnesses on the grounds of relevancy. The trial court concluded that the evidence was irrelevant and refused to allow the testimony. In considering Lee-Norse's contention that such exclusion was erroneous, we must remember that the determination of whether proffered evidence is relevant is a matter committed to the discretion of the trial court. *Beck v. Quik-Trip Corp.,* 708 F.2d 532 at 535 (10th Cir.1983). We will not disturb the trial court's decision on appeal absent a showing of clear abuse of discretion. *Id.* We will accord similar deference to a trial court's determination that the evidence's probative value is outweighed by its potential for prejudicing or confusing a jury. *Texas Eastern Transmission Corp. v. Marine Office-Appleton & Cox Corp.,* 579 F.2d 561, 567 (10th Cir.1978). Moreover, if there is error in the admission or exclusion of evidence, we will set aside a jury verdict only if the error prejudicially affects a sub-

stantial right of a party. Fed.R.Civ.P. 61; Fed.R.Evid. 103(a); *Rasmussen Drilling, Inc. v. Kerr-McGee Nuclear Corp.,* 571 F.2d 1144, 1149 (10th Cir.), *cert. denied,* 439 U.S. 862, 99 S.Ct. 183, 58 L.Ed.2d 171 (1978).

With respect to the defense of unreasonable use, Lee-Norse claims that the excluded evidence was relevant to Beacham's knowledge of the defect, his awareness of the danger it posed, and his unreasonable conduct in proceeding to use the product anyway. Experts would have testified that Beacham acted unreasonably in standing on the crib block by the machine despite his awareness of the pinch point.

To establish the defense of unreasonable use in Utah, the defendant must show that with knowledge of the defect and awareness of the danger it posed, the user unreasonably proceeded to use the product. *Mulherin, supra,* 628 P.2d at 1303; *Hahn, supra,* 601 P.2d at 158. Implicit in the element of unreasonable conduct is the requirement that the conduct be voluntary. *See* note 3, *supra.* That is, the user must consciously decide to use the product despite his awareness of the defect. The evidence indicated that Beacham and other helpers at times had no choice but to stand close to the bolter and its pinch points in the performance of their duties. According to Lee-Norse, by this conduct Beacham voluntarily exposed himself to a known risk. We cannot agree.

In cases where the alleged defect is one of design, particularly the lack of a safety device, a defendant must show voluntary conduct by the user beyond simply using the product for its intended function. *See Green v. Edmands Co.,* 639 F.2d 286, 290 (5th Cir.1981) ("[a]n individual who has no choice but to encounter the risk cannot be found to have voluntarily encountered the risk"). Irrespective of whether Beacham was aware of the pinch points, he did not voluntarily encounter them simply by

---

4. The Utah Supreme Court, consistent with the concept of comparative fault, is seeking to abolish the "assumption of risk" terminology. *Mulherin, supra,* 628 P.2d at 1303 n. 3 (citing

*Jacobsen Construction Co. v. Structo-Lite Engineering, Inc.,* 619 P.2d 306, 312 (Utah 1980)). For convenience, we will refer to the "assumption of risk" defense as "unreasonable use".

performing his duties. Similarly, he did not unreasonably encounter them by negligently standing on a crib block. For his conduct to be voluntary and unreasonable, Beacham would have to decide to place himself in a position where the pinch points could cause him harm. For example, if Beacham had reached between the canopy support arm and the drill boom arm to retrieve a tool or to repair the bolter, there would be a jury question whether his conduct was voluntary and unreasonable.

◼ In the instant case, however, there was no evidence that Beacham voluntarily encountered the risk created by the pinch points. Instead, it is undisputed that while performing his duties, he slipped or lost his balance and fell toward the roof bolter, which he instinctively grabbed. Under these circumstances, even if Beacham was aware of the pinch points, evidence indicating that he was negligent in standing on slippery crib blocks is evidence of contributory negligence only, not of unreasonable use. As we noted above, common contributory negligence is not a defense to strict products liability in Utah. *Hahn, supra,* at 158–59. Thus, Lee-Norse's evidence was not relevant to the issue of unreasonable use and was properly excluded.

Lee-Norse also contends that the trial court erred in excluding evidence that elevating the roof bolter on crib blocks constituted misuse of the product. Lee-Norse's witness would have testified that such use made the bolter unstable and was an unsafe mining practice. Further, one witness would have testified that he observed the roof bolter shortly before and after the accident. Before the accident the bolter was in satisfactory condition, but after the accident the turntable of the machine was severely bent and required substantial repairs. From this evidence, Lee-Norse argues that the jury could have inferred that the bolter fell off the crib blocks, causing the damage to the machine and Beacham's injuries.

◼ In Utah, misuse is a defense only if it is at least a concurrent proximate cause of the accident. *Mulherin, supra,* 628 P.2d

at 1303; *Hahn, supra,* 601 P.2d at 158 n. 5. Unless there was a causal relation between the elevation of the bolter and the accident, the evidence that such elevation constituted misuse was simply further prejudicial and irrelevant evidence of contributory negligence.

◼ The only proffered evidence indicating a causal relation between the elevation and the accident was that the turntable of the bolter was bent after the accident. In their descriptions of the accident, neither Silva nor Beacham indicated that the machine fell off the crib blocks. There was no evidence as to how the bent turntable would indicate that the bolter fell from the blocks. No evidence was offered to show how the bolter's falling would have contributed to the accident. In sum, Lee-Norse presented no other evidence of a causal relation between the misuse of the bolter and the accident. Standing alone, the evidence concerning the bent turntable was insufficient to raise a jury question on causation. Consequently, to any extent the turntable evidence was relevant, its exclusion was harmless error. Since there was no other evidence of a causal relation, the remainder of the evidence relating to misuse was irrelevant and properly excluded.

◼ Lee-Norse further contends that certain excluded evidence was relevant to show that the bolter was not unreasonably dangerous. Utah has a statute that defines "unreasonably dangerous" to mean that:

the product was dangerous to an extent beyond which would be contemplated by the ordinary and prudent buyer, consumer or user of that product in that community considering the product's characteristics, propensities, risks, dangers and uses *together with any actual knowledge, training, or experience possessed by that particular buyer, user or consumer.*

Utah Code Ann. § 78–15–6(2) (1953) (emphasis added). One of Lee-Norse's witnesses would have testified that Beacham's training included warnings of the pinch point. Another witness would have testified that the Braztah Company at one time

had guarded the pinch point, but that the guards had been removed. Remnants of the guards remained on the machine, however, which would give Beacham actual knowledge of the danger of the pinch point. According to Lee-Norse, the excluded evidence therefore also was relevant to the statutory definition of unreasonably dangerous.

It is our view that there was evidence before the jury tending to show that Beacham had or should have had knowledge of the pinch points. This view is confirmed by the following question which the jury directed to the trial judge during its deliberations: "Can we find for plaintiff even though the danger is open and obvious to any prudent user?" R., Vol. I at 250. The jury obviously was aware that, whether by training, observation, or experience, Beacham should have had actual knowledge of the danger presented by the pinch points. As the trial court noted, however, the statutory definition does not necessarily address the situation presented here where Beacham involuntarily encountered that danger. The statutory definition only lists factors to be considered in determining whether a product is unreasonably dangerous. Where a user encounters the defect involuntarily because a safety device was not provided, evidence of his actual knowledge, training, or experience is of only limited value: "We have difficulty seeing how the knowledge of the dangerousness can alleviate the dangerous condition inasmuch as the performance by plaintiff of his assigned tasks subjected him to injury regardless of the care exercised." *Davis v. Fox River Tractor Co.,* 518 F.2d 481, 485 (10th Cir.1975) (footnote omitted). We conclude that the jury had sufficient evidence of Beacham's actual knowledge, and the excluded evidence concerning knowledge, training, and experience was of very limited relevance in this case, so that any error in excluding the evidence was harmless.

Lee-Norse next argues that the trial court erred in ruling that its affirmative defenses were insufficient as a matter of law and in refusing to instruct the jury on them. With respect to the defenses of mis-

use and unreasonable use, our discussion of the evidentiary rulings disposes of this argument. Lee-Norse simply offered no evidence indicating that Beacham voluntarily and unreasonably encountered the danger presented by the pinch point or that misuse of the bolter was causally related to the accident. At best, Lee-Norse's evidence indicated common contributory negligence on the part of Beacham. The trial court correctly refused to instruct the jury on the defenses of misuse and unreasonable use.

 Lee-Norse also raised a statutory affirmative defense on which the trial court refused to instruct. That defense provides:

> No manufacturer or seller of a product shall be held liable for any injury, death or damage to property sustained as a result of an alleged defect, failure to warn or protect or failure to properly instruct, in the use or misuse of that product, where a substantial contributing cause of the injury, death or damage to property was an *alteration or modification of the product, which occurred subsequent to the sale by the manufacturer or seller to the initial user or consumer, and which changed the purpose, use, function, design or intended use or manner of use of the product from that for which the product was originally designed, tested or intended.*

Utah Stat.Ann. § 78–15–5 (1953) (emphasis added). Lee-Norse argues that the statute applies here because the bolter was elevated on crib blocks.

We read this statute as requiring some sort of physical alteration or modification of the product itself which leaves the product in a different condition or form than it was in when it left the manufacturer's or seller's hands. Here, though the bolter was elevated, it was the same machine as it was when Lee-Norse sold it. Nevertheless, even if the elevation is considered an "alteration or modification" of the product, the statute requires that the modification be a substantial contributing cause of the injury. As the trial court observed, and we have emphasized, there was no evidence presented

that would establish a causal relation between the elevation of the bolter and the accident. The trial court correctly refused to instruct the jury on this defense.

WE AFFIRM.