**Jon J. LEIDEL, Plaintiff,**

v.

**AMERIPRIDE SERVICES, INC., d/b/a Ameripride Linen and Apparel Services, Defendant.**

**No. 00–4184–JAR.**

United States District Court, D. Kansas.

Nov. 13, 2003.

David O. Alegria, McCullough, Wareheim & LaBunker, P.A., Topeka, KS, for Plaintiff.

Brenda L. Head, Davis, Unrein, McCallister, Biggs and Head, LLP, Topeka, KS, for Defendant.

*MEMORANDUM AND ORDER DENYING IN PART AND GRANTING IN PART MOTION FOR RENEWED JUDGMENT, NEW TRIAL AND SANCTIONS*

ROBINSON, District Judge.

This matter is before the Court on Plaintiff's Motion for Renewed Judgment as a Matter of Law or for a New Trial on the Issue of Sexual Harassment and Motion for Sanctions. (Doc. 78). On January 28, 2003, the jury returned a verdict in favor of Plaintiff on his claim of retaliation, and in favor of Defendant on Plaintiff's claim of sexual harassment/hostile work environment. The jury determined that Plaintiff sustained no damages on his retaliation claim; but the Court entered a judgment (Doc. 77) awarding Plaintiff $30,847.14 in backpay and $5,287.04 in prejudgment interest for a total $36,134.18.[1]

Plaintiff moves for judgment as a matter of law on the sexual harassment/hostile work environment claim, and seeks compensatory damages for emotional distress, as well as punitive damages on that claim. Alternatively, Plaintiff moves for a new trial on the sexual harassment/hostile work environment claim on the basis of several instances of defense misconduct and several evidentiary errors, both of which Plaintiff contends prejudiced his right to a fair trial. Plaintiff also moves for sanctions on the basis of defense misconduct, and asks the Court to either grant judgment on the sexual harassment/hostile work environ-

---

1. The Court issued a Memorandum Order and Opinion (Doc. 76) granting Plaintiff's request for backpay and denying his request for front pay.

ment claim, or alternatively, to sanction Defendant in the amount of the damages this Court previously awarded on the retaliation claim.

Viewing the evidence in the light most favorable to Defendant, the Court cannot grant judgment as a matter of law on the sexual harassment claim, as there is sufficient evidence supporting the jury's verdict in favor of Defendant. The Court also denies Plaintiff's motion for new trial, because none of the evidentiary issues singularly or cumulatively prejudiced Plaintiff nor deprived him of a fair trial. With respect to the allegations of misconduct at trial by Defendant and defense counsel, although the Court does not find a demonstration of prejudice warranting a new trial, the Court grants Plaintiff's motion for sanctions, based on defense counsel's willful violation of the Court's order excluding witnesses from the courtroom, and the Court's limine ruling that Plaintiff's ex wife would not be allowed to testify.

**Analysis**

**1. Motion for Judgment as a Matter of Law**

■ Under Federal Rule of Civil Procedure 50(a)(1), a Court may grant a motion for judgment as a matter of law when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue."[2] Judgment as a matter of law, is to be ". . . cautiously and sparingly granted,"[3] and "only if the evi-

dence points but one way and is susceptible to no reasonable inferences which may support the opposing party's position."[4] The court reviews all of the evidence in the record and construes it in the light most favorable to the nonmoving party.[5] "The jury has the exclusive function of appraising credibility, determining the weight to be given to the testimony, drawing inferences from the facts established, resolving conflicts in the evidence, and reaching ultimate conclusions of fact."[6]

In arguing that the weight of the evidence supported his claim of sexual harassment/hostile work environment, Plaintiff commits most of his discussion to evidence that Defendant was aware of the sexual harassment and failed to take corrective or preventive measures. Of course, before the trier reaches the issue of employer liability, it must determine whether there was a hostile work environment pervaded by sexual harassment. Plaintiff contends that his evidence was of the "hard core" type of harassment that was both objectively and subjectively offensive.

Viewing the evidence in the light most favorable to Defendant, the Court disagrees. There was conflicting evidence about the nature, severity, frequency and perception of sexually tinged behavior in the workplace. Two co-workers corroborated parts of Plaintiff's testimony that Tonya McConnell[7] engaged in sexually inappropriate language and touching. But

---

**2.** Fed.R.Civ.P. 50(a)(1).

**3.** Fed.R.Civ.P. 50(b); *Rahn v. Junction City Foundry, Inc.*, 161 F.Supp.2d 1219, 1227 (D.Kan.2001).

**4.** *Tyler v. RE/MAX Mountain States, Inc.*, 232 F.3d 808, 812 (10th Cir.2000) (citing *Finley v. United States*, 82 F.3d 966, 968 (10th Cir. 1996)) (quotation marks and citation omitted).

**5.** *Id.*

**6.** *See United Intern. Holdings, Inc. v. Wharf (Holdings) Ltd.*, 210 F.3d 1207, 1227 (10th Cir.) (internal quotations and citation omitted), *cert. granted in part*, 531 U.S. 978, 121 S.Ct. 425, 148 L.Ed.2d 434 (2000), *aff'd* 532 U.S. 588, 121 S.Ct. 1776, 149 L.Ed.2d 845 (2001).

**7.** Also referred to as Tonya Caraballo or Tonya Carabello in parts of the record.

the evidence did not point in one way, and a reasonable jury could have determined that the harassment complained of was neither objectively nor subjectively offensive. For example, Plaintiff admitted that he was initially involved in a consensual sexual relationship with Tonya McConnell, the accused harasser. Other co-workers testified that Plaintiff and McConnell by all appearances engaged in consensual sexually charged conversation in the workplace. Plaintiff admitted that even during the period he considered himself victimized by McConnell's sexual harassment, he did not avoid contact with her; in fact, he chose to use her office to fill out paperwork even though there were other places in the workplace that could have served this purpose. Thus, Plaintiff willingly subjected himself to McConnell's presence during the very period that she was supposedly harassing him.

In contrast to Plaintiff's testimony that he found McConnell's conduct subjectively offensive, co-workers testified that Plaintiff never displayed any subjective signs of being offended by the work environment. Moreover, the jury heard one co-worker testify that McConnell complained to him about Plaintiff's conduct, which she thought was offensive to her.

It is not the Court's province to weigh the evidence nor evaluate the credibility of these conflicting witness accounts. The jury's verdict represents their evaluation of the evidence and, having considered the entire record, this Court finds that there was sufficient evidence for the jury's verdict. The Court need not address Plaintiff's arguments about the weight of the evidence supporting a determination of employer liability for this claim, since there was sufficient evidence for the jury to conclude that this workplace was not subjectively and objectively hostile.

Because the Court concludes that this is not the extraordinary situation where judgment as a matter of law is appropriate, the Court need not address Plaintiff's further requests for compensatory damages for emotional distress and punitive damages on the sexual harassment/hostile work environment claim.

■ With respect to the retaliation claim, the jury awarded Plaintiff no damages, but the Court awarded backpay and prejudgment interest after post-trial briefing on the issue. Having reviewed the record, the Court finds no basis to award as a matter of law, compensatory and punitive damages on the retaliation claim. It is the jury's province to award these types of damages.[8] Moreover, viewing the evidence in the light most favorable to Defendant, the Court cannot find that the evidence of emotional distress is one-sided; Defendant offered evidence that there were other potential sources of emotional distress in Plaintiff's life at the pertinent time.

Nor can the Court find that the evidence points only one way with respect to Plaintiff's claim that he is entitled to punitive damages on his retaliation claim. In *Kolstad v. American Dental Ass'n*,[9] the United States Supreme Court ruled that punitive damages are appropriately awarded when an employer engages in discriminatory conduct "with malice or reckless indifference to the federally protected rights of an aggrieved individual."[10] Although Defendant's general manager and sales manager admitted that they knew it was illegal

**8.** *Rahn v. Junction City Foundry, Inc.,* 161 F.Supp.2d at 1242.

**9.** 527 U.S. 526, 119 S.Ct. 2118, 144 L.Ed.2d 494 (1999).

**10.** *Id.* at 548, 119 S.Ct. 2118; 42 U.S.C. § 1981a(b)(1).

to fire Defendant in retaliation for filing a complaint of sexual harassment, they also testified that he was terminated for failing to meet a certain performance standard, not for retaliatory reasons.

Having been instructed by this Court as to the elements necessary to award punitive damages,[11] the jury awarded none, apparently concluding that Defendant's acts were not malicious or recklessly indifferent. Given the testimony that Defendant's managers sought legal advice and evaluated their decision to terminate him in light of that advice, it was reasonable for a jury to infer that although retaliatory, the termination was not done maliciously or recklessly.

### 2. Motion for New Trial

In the alternative, Plaintiff moves for a new trial under Fed.R.Civ.P. 59(a)(1),[12] on the basis that several instances of defense misconduct and/or several evidentiary errors prejudiced his right to a fair trial.[13] Evidentiary rulings are committed to the "very broad discretion" of the trial court.[14] An evidentiary ruling is an abuse of discretion only if based on "an erroneous conclusion of law, a clearly erroneous finding of fact, or a manifest error in judgment."[15] Even if an evidentiary ruling rises to an abuse of discretion, a new trial still is inappropriate unless the error prejudicially affected the movant's "substantial rights."[16]

#### a. Evidence

■ Plaintiff contends that three evidentiary rulings prejudiced him to a degree warranting a new trial: (1) admission of evidence about a $65,000 past due debt Plaintiff owed; (2) admission of evidence that at the time of this litigation he was engaged in other litigation in which he asserted a claim for $1.4 million; and (3) admission of certain testimony of Kim Stewart–Porter as violative of Fed.R.Evid. 412 and pretrial discovery orders.

None of these evidentiary issues warrants a new trial. Because Plaintiff sought compensatory damages for emotional suffering, evidence concerning other sources of emotional distress during that time of his life was quite probative. The evidence concerning Plaintiff's engagement in other litigation in which he also claimed damages for emotional distress, as well as evidence of financial problems, was relevant to impeach his testimony that it was Defendant's conduct that caused him emotional suffering.

■ Plaintiff further complains about the admission of certain testimony given by his former co-worker Kim Stewart–Porter, that Plaintiff had looked at her in a manner that suggested he was asking her out. Plaintiff contends that this testimony, which he argues characterized him as acting in a "sexually provocative" way, exceeded the scope of the anticipated testimony disclosed to Plaintiff pretrial. But in its witness and exhibit list[17] submitted on June 14, 2001, some 18 months before

---

**11.** *See* Jury Instruction No. 23 (Doc. 67).

**12.** Fed.R.Civ.P. 59(a)(1) provides in pertinent part that a new trial may be granted "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States."

**13.** Plaintiff does not move for new trial on the basis of the weight of the evidence in favor of the sexual harassment claim.

**14.** *Webb v. ABF Freight System, Inc.,* 155 F.3d 1230, 1246 (10th Cir.1998), *cert. denied* 526 U.S. 1018, 119 S.Ct. 1253, 143 L.Ed.2d 350 (1999).

**15.** *Id.* (citation omitted).

**16.** *Id.* (citation omitted).

**17.** Doc. 22, p. 2–3

trial, Defendant described the substance of Stewart–Porter's testimony as "Mr. [sic] Stewart was a co-worker and has information relevant to Plaintiff's work performance, his relationship with Tonya Caraballo and the investigation conducted by the Defendant." The Court finds that Stewart–Porter's testimony about her observations of Plaintiff's conduct in the workplace, including his conduct towards her, falls within the fairly broad description of her anticipated testimony. Plaintiff chose not to take her deposition, and thus his protestations of surprise are not very persuasive.[18]

■ Plaintiff further argues that Kim Stewart–Porter's testimony violated Fed. R.Evid. 412.[19] The Court disagrees. Stewart–Porter's testimony relating to her impressions of Plaintiff's behavior in the workplace falls far short of the descriptive sexual behavior, sexual history or sexual predisposition precluded by Rule 412. Further, Stewart–Porter's testimony was probative on the issue of Plaintiff's subjective belief that the work environment was hostile. Her testimony was also probative on the credibility of Plaintiff's testimony that he had a "policy" of not dating or socializing with his co-workers. Finally, even assuming arguendo the testimony of Stewart–Porter was in some way improper, Plaintiff waived any claim or error by failing to object to Stewart–Porter's testimony during the trial and failing to request that a curative instruction be given to the jury.[20]

Because the Court finds no error in the identified evidentiary issues, and because evidentiary errors warrant a new trial only when a party's substantial rights are adversely and prejudicially affected,[21] the Court denies the motion for new trial on this basis.

### b. Misconduct

Plaintiff complains that three instances of misconduct by the defense during the trial prejudiced his right to a fair trial. The Court addresses these allegations in turn.

### 1) Comment in Closing Argument

■ Plaintiff complains that during its closing argument, the defense inappropriately referenced that Plaintiff had failed to call his expert, Dr. Schulman to testify. This was not inappropriate. Plaintiff was seeking damages for emotional suffering, and it was proper to point out that Plaintiff's only evidence in that regard was his

---

**18.** *See Hynes v. Energy West, Inc.,* 211 F.3d 1193, 1203 (10th Cir.2000) ("[W]hen a party requests a new trial on the basis of surprise testimony it must be able to show surprise, prejudice, and an attempt to cure the prejudice such as a motion for a continuance.")

**19.** Rule 412 provides:

Sex Offense Cases; Relevance of Alleged Victim's Past Sexual Behavior or Alleged Sexual Predisposition (a) Evidence generally inadmissible.—The following evidence is not admissible in any civil or criminal proceeding involving alleged sexual misconduct except as provided in subdivisions (b) and (c):

(1) Evidence offered to prove that any alleged victim engaged in other sexual behavior.

(2) Evidence offered to prove any alleged victim's sexual predisposition.

(b) Exceptions.—

(2) In a civil case, evidence offered to prove the sexual behavior or sexual predisposition of any alleged victim is admissible if it is otherwise admissible under these rules and its probative value substantially outweighs the danger of harm to any victim and of unfair prejudice to any party. Evidence of an alleged victim's reputation is admissible only if it has been placed in controversy by the alleged victim.

**20.** *Hynes v. Energy West, Inc.,* 211 F.3d at 1203 (citing *Marino v. Otis Engineering Corp.,* 839 F.2d 1404, 1412 (10th Cir.1988)).

**21.** *Sanjuan v. IBP, Inc.,* 160 F.3d 1291, 1297 (10th Cir.1998).

own testimony, not the testimony of his psychologist, Dr. Schulman. Closing arguments are not evidence and the jury was instructed to that effect.[22] Although it is true, as Plaintiff now argues, that Defendant could have called Dr. Schulman as a witness, that is an argument Plaintiff could have made in his rebuttal closing argument.

### 2) Violation of Fed.R.Evid. 615

█ At the end of the first day of trial, January 21, 2003, and before Plaintiff had called his first witness, defense counsel Brenda Head asked the Court to order the sequestration of the witnesses, and whether she should renew her request the next day since no witnesses were present at that time. The Court responded that it would invoke the rule and expect counsel to "self-police" the witnesses, although the Court could also given an admonition to the witnesses, if counsel desired. The following morning, defense counsel reminded the Court about the sequestration order, and further advised the Court that she and Plaintiff's counsel had spoken with the witnesses who were former employees and advised them of the limitations on their testimony pursuant to the Court's limine rulings.

By invoking Fed.R.Evid. 615, at Defendant's request, the Court excluded witnesses from the courtroom so that they could not hear the testimony of other witnesses. Rule 615 applies before, during and after a witness has testified.[23] Imposition of this rule "exercises a restraint on witnesses 'tailoring' their testimony to that of earlier witnesses; and it aids in detecting testimony that is less than candid." [24]

Given that the Court invoked Rule 615 at the beginning of the trial when many or all witnesses were not present to hear the Court's order excluding the witnesses, the Court directed counsel to police the order. This of course meant that counsel were to monitor the courtroom to ensure that witnesses did not enter the courtroom during another witness's testimony, and that counsel should advise witnesses to not discuss their testimony with one another. The following morning, counsel indicated that together they had advised the witnesses of the Court's order.

Nevertheless, Rule 615 was violated when witnesses Troy Harrison and Tonya McConnell discussed their testimony during a recess in the middle of Troy Harrison's testimony. Plaintiff became aware that Harrison and McConnell had met for lunch, and when testimony resumed, Harrison admitted on cross-examination that he and McConnell had discussed their testimony. Harrison further testified that he was not aware of the Court's order prohibiting this. If counsel had advised Harrison of the Court's order, his violation of the order was apparently inadvertent, and not willful. Harrison apparently did not understand that he was prohibited from discussing testimony with McConnell or any other witness.

The Court is troubled, however, by Harrison's testimony that he discussed his testimony with McConnell while he ate lunch with McConnell, defendant's corporate representative Matt Wenzel,[25] and *defense*

---

**22.** *See* Jury Instruction No. 7, (Doc. 67).

**23.** *United States v. Greschner,* 802 F.2d 373, 375–376 (10th Cir.1986), *cert. denied* 480 U.S. 908, 107 S.Ct. 1353, 94 L.Ed.2d 523 (1987)(court erred in refusing to sequester witness after testimony, because rule applies prospectively and retrospectively, to preclude witnesses who have already testified from discussing the case with the other witnesses).

**24.** *Geders v. United States,* 425 U.S. 80, 87, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976) (citation omitted).

**25.** As Defendant's corporate representative, Wenzel was not excluded from the trial under

*counsel*, Brenda Head. Not only did defense counsel not enforce and police the Court's order invoking Rule 615 at *the defense's* request, defense counsel encouraged and assisted its violation by these witnesses. Defendant has no response or explanation for this flagrant violation of Rule 615 and the Court's order.[26]

While counsel are not prohibited from speaking to witnesses pursuant to Rule 615,[27] counsel should not do what counsel did in this case, effectively encourage and assist the witnesses in violating Rule 615 by discussing their testimony in the presence of other witnesses. This was *not an inadvertent violation* by defense counsel, and potentially prejudiced Plaintiff by giving these witnesses an opportunity to fabricate or collude to make their testimony more consistent.

There are a number of remedies a court might employ during the trial, when such a violation arises. Although Rule 615 does not specify remedies, courts have *inter alia*, cited the witness in contempt, permitted opposing counsel to comment on the witness's violation of the rule, allowed opposing counsel to impeach the witness with cross examination on the issue, or given a curative jury instruction.[28] In the Tenth Circuit, a witness's intentional disregard of the order, or a showing of resulting preju-

dice may warrant the court excluding or striking the witness's testimony.[29]

In this case, Plaintiff's counsel cross-examined Harrison about the matter, but the Court took no other steps because Plaintiff did not ask the Court for any further relief at that time. Moreover, most remedies employed by courts during the trial address a violation by the witness. In this case, the witness's violation was not intentional or willful. Defense counsel violated the rule, after asking that it be invoked, and after assuring the Court that she and Plaintiff's counsel had advised the witnesses. The Court can only conclude that defense counsel's violation of Rule 615 was willful and in bad faith.

Plaintiff asks for judgment as a matter of law, or a new trial. Plaintiff cites to no authority that judgment as a matter of law is an appropriate remedy. And, in order to obtain a new trial for a violation of Rule 615, Plaintiff must show that the violation resulted in prejudice.[30] To be sure, the jury heard conflicting witness testimony about Tonya McConnell's conduct, Plaintiff's conduct, the work environment, and whether there could reasonably be an objective or subjective belief that the work place was hostile and abusive because of Tonya McConnell's sexually provocative

Rule 615.

**26.** Defendant's response is limited to a denial that Troy Harrison and Matt Wenzel discussed testimony during a conversation they were observed to have in the hallway outside of the courtroom. Plaintiff is not complaining that this encounter violated Rule 615, as Harrison and Wenzel stated that they were merely exchanging "common pleasantries" and not discussing the case or testimony.

**27.** *United States v. Buchanan*, 787 F.2d 477, 485 (10th Cir.1986), *grant of post-conviction relief rev'd by* 891 F.2d 1436 (1989).

**28.** 4 *Weinstein on Evidence*, § 615.07[2] (2003).

**29.** *United States v. Buchanan*, 787 F.2d at 485 (Absent a showing of prejudice, exclusion or striking witness testimony for violation of Rule 615 is not warranted.); *United States v. Johnston*, 578 F.2d 1352, 1355 (10th Cir. 1978), *cert. denied*, 439 U.S. 931, 99 S.Ct. 321, 58 L.Ed.2d 325 (1978) (A showing of intentional disregard of the rule may support striking or excluding such testimony).

**30.** *United States v. Prichard*, 781 F.2d 179, 183 (10th Cir.1986) (new trial for violation of Rule 615 not required unless violation resulted in prejudice) (citation omitted).

conduct. Witness credibility was critical to the jury's evaluation of the evidence.

But, Plaintiff must show more than the speculative, broad brush argument he makes here. He must show that he was prejudiced by Harrison and McConnell's opportunity to discuss and collude about their testimony. In *United States v. Prichard*,[31] the Tenth Circuit noted that the party moving for a new trial must prove that the violation of Rule 615 prejudiced him, or that the Court's failure to exclude the testimony was an abuse of discretion. In this case, Plaintiff never asked that Harrison or McConnell's testimony be excluded, and this Court did not abuse its discretion in allowing their testimony. Plaintiff has failed his burden of showing prejudice. Thus the motion for new trial on this ground must be denied.

### 3) *Violation of Limine Ruling*

■ In another appalling disregard of the Court's order and counsel's duty as an officer of the Court, defense counsel Brenda Head attempted to violate the Court's limine ruling excluding the testimony of proposed witness Paula Leidel. During Defendant's case, the Court told Defendant to call its next witness. At that point, defense counsel ushered or had someone usher Paula Leidel into the courtroom. The Court did not know who this woman was, and the court reporter asked her to state her name and spelling of her name. Defense counsel responded by announcing "Paula Leidel." This announcement was clearly loud enough for the jury and the Court to hear.[32] Plaintiff's counsel immediately objected; both counsel came to the bench for a conference outside of the jury's hearing.

On the very day of this incident, outside of the jury's presence, the Court had heard Plaintiff's Motion to Admonish Defendant (Doc. 65) for violating or attempting to violate Fed.R.Evid. 412. Having learned that Defendant had subpoenaed Plaintiff's ex-wife, Paula Leidel, Plaintiff was concerned that Defendant would elicit testimony from her about Plaintiff's sexual behavior or predisposition. The Court denied the motion when defense counsel assured the Court that no such testimony would be elicited from Paula Leidel, nor would her testimony concern anything "about his relationships or anything like that."

However, the Court granted Plaintiff's motion to exclude the testimony of Paula Leidel because she had not been previously disclosed as a potential witness. Defendant protested that Paula Leidel would be testifying solely for purposes of impeachment and thus Fed.R.Civ.P. 26(a)(3) did not require Defendant to disclose her identity pretrial. More specifically, defense counsel proffered that Paula Leidel would "impeach a statement in the psychologist's report," as well as Plaintiff's testimony that he had "trust issues" as a consequence of Defendant's actions. The Court rejected that argument, which seemed to conflict with defense counsel's assertion that Paula Leidel would not be testifying about Plaintiff's relationships with others.

The Court noted that Paula Leidel could not be called as a "rebuttal" witness as Defendant urged, because Defendant was still in its case in chief, and it was unknown whether Plaintiff and Defendant would present rebuttal cases. The Court

---

**31.** *Id.*

**32.** Despite Defendant's protestations to the contrary, the Court's recollection of this incident is *quite clear.* Unquestionably, defense counsel stated the witness's name loud enough for the jury to hear. In fact, the Court recalls observing the jury's heightened attention when this name was announced, and when Plaintiff's counsel quickly and loudly objected.

noted that in the event there was a rebuttal case, the Court would revisit this issue.

Furthermore, although recognizing that Rule 26(a)(3) excepts from disclosure requirements witnesses called solely for purposes of impeachment, the Court questioned whether this witness would truly be called solely for impeachment. Impeachment testimony about "trust issues" sounded dangerously close to testimony about Plaintiff's relationship with Paula Leidel, that is, specific instances of conduct that would be inadmissible under Fed. R.Evid. 608(b).[33] The Court further ruled that even if such testimony would otherwise be admissible, the Court would need to weigh the probative value versus the prejudicial effect.

Despite this ruling, later that day Defendant attempted to call Paula Leidel as a witness. Defense counsel did not ask for reconsideration of the Court's earlier ruling, nor did counsel approach the bench to advise the Court that Defendant wanted to present further argument in favor of its desire to call Paula Leidel as a witness. Instead defense counsel had Paula Leidel come into the courtroom, and as the jury watched Paula Leidel approach the witness stand, defense counsel announced her name.

This was a flagrant violation of the Court's limine ruling. At the bench conference that immediately followed Plaintiff's objection, defense counsel represented that she intended to approach the bench before examining Paula Leidel. The Court was not and is not persuaded by that representation. Ms. Head should not have had Paula Leidel come forward to take the witness stand if she intended to first seek reconsideration from the Court. Defense counsel's protestation that she announced Paula Leidel's name, only because the court reporter asked for her name, is equally unpersuasive. This was a willful and offensive stunt designed to let the jury know that Plaintiff's ex-wife had something to say, whether the Court allowed her testimony or not.

During the bench conference, when the Court admonished defense counsel for this highly inappropriate tactic, defense counsel responded that after the Court's limine ruling, an associate in her office who is a former federal law clerk, had advised her that Paula Leidel could properly be called solely for purposes of impeachment. Apparently, defense counsel believed it appropriate to defy or disregard the Court's limine ruling because an associate in her office told her the evidence was admissible.

Finally, during the bench conference, defense counsel asked to proffer Paula Leidel's testimony, although the Court had heard a proffer at the time it had ruled that she could not testify. The Court recessed the jury, to allow defense counsel to make a proffer. This time, defense counsel raised a new basis for Paula Leidel's testimony, that she would testify about Plaintiff's reputation for untruthfulness in the community, which is negative character evidence under Rule 608(a).[34]

The Court rejected this basis as well, determining that the probative value of Paula Leidel's testimony about Plaintiff's reputation was outweighed by its prejudicial effect.[35] First, Plaintiff was not mar-

---

33. Fed.R.Evid. 608(b) prohibits evidence of specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime; such instances may, in the discretion of the court, be inquired into on cross-examination if probative of truthfulness or untruthfulness.

34. Fed.R.Evid. 608(a) permits the credibility of a witness to be attacked or supported by evidence in the form of opinion or reputation, but the evidence must refer only to character for truthfulness or untruthfulness and only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.

35. *See United States v. Bedonie*, 913 F.2d 782,

ried to Paula Leidel during any of the times at issue in this case. Nothing suggested that her testimony about his reputation would concern a relevant time period. Second, the Court was concerned about whether her testimony would truly be confined to Rule 608(a) matters, or whether there would be an attempt to have her testify to specific instances of conduct, which is prohibited by Rule 608(b), or matters within the scope of evidence precluded by Rule 412. Having received the same ruling as before, Defendant rested its case as soon as the jury was returned to the courtroom. Plaintiff rejected the Court's offer to give the jury a curative instruction. No rebuttal case was presented by Plaintiff.

The effect of this entire episode was the jury saw and heard Defendant's attempt to call Plaintiff's ex-wife as a witness, and knew that the Court did not allow her testimony. Any questions this raised in the jury's mind, despite being instructed that they were to consider only testimony and admitted documents as evidence, cannot be discounted. This was an entirely unnecessary situation, caused solely by Defendant's failure to abide by the Court's earlier order and failure to seek reconsideration of the order in a proper manner.

That being said, Plaintiff has not shown prejudice warranting a new trial. Moreover, by not moving for a mistrial on the basis of defense misconduct in calling Paula Leidel, or on any other ground, Plaintiff has effectively waived his right to a new trial on these grounds.[36]

Plaintiff argues that these evidentiary errors and the defense's misconduct, either singularly or cumulatively, denied him a fair trial on his claim of sexual harassment and prejudiced his substantial rights. A cumulative-error analysis aggregates all the errors that have individually been found to be harmless, and therefore not reversible, and analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless.[37] "The decision whether misconduct in a trial has been so egregious as to require retrial is largely left to the discretion of the trial court."[38] In this case, Plaintiff has made no attempt to demonstrate specific harm or prejudice, and the motion for new trial is denied.

### 3. Motion for Sanctions

■ Alternatively, based on the same misconduct outlined above, Plaintiff seeks sanctions in the form of: (1) entry of judgment on the sexual harassment claim with an award of compensatory and punitive damages; (2) an order for a new trial on the sexual harassment claim; or (3) a monetary sanction in an amount "at least equal to the judgment entered in favor of plaintiff on his retaliation claim." Plaintiff moved for sanctions during the trial, and the Court directed the parties to address the issue of sanctions in their post trial briefing. For the reasons outlined above, judgment as a matter of law or a new trial is not warranted. Moreover, it is not misconduct of Defendant that is at issue; it is misconduct of defense counsel. Granting judgment or a new trial would unduly punish the Defendant for the misconduct of its

---

801–802 (10th Cir.1990), *cert. denied,* 501 U.S. 1253, 111 S.Ct. 2895, 115 L.Ed.2d 1059 (1991) (Rule 608(a) is subject to the Rule 403 balancing test).

**36.** *See, e.g., Polson v. Davis,* 895 F.2d 705, 711 (10th Cir.1990)(citing *Beacham v. Lee–Norse,* 714 F.2d 1010, 1014 (10th Cir.1983)).

**37.** *McCue v. State of Kan., Dept. of Human Resources,* 165 F.3d 784, 791 (10th Cir.1999) (citation omitted).

**38.** *Polson v. Davis,* 895 F.2d at 711.

counsel. To the extent possible, the sanction should be imposed on the party or person responsible for the sanctionable conduct.[39]

In this case, the Court is particularly troubled by two instances of misconduct by defense counsel: the violation of Rule 615 and the disregard of the Court's limine ruling excluding the testimony of Paula Leidel. Defense counsel is the person who engaged in, and is responsible for this sanctionable conduct. The Court has inherent authority to supervise and monitor the conduct of attorneys admitted to practice.[40] "While this power 'ought to be exercised with great caution,' it is nevertheless 'incidental to all Courts.' "[41]

The Tenth Circuit has set out three factors that the court should expressly consider in determining the proper monetary sanction: (1) the reasonable expenses incurred as a result of the sanctionable misconduct, including reasonable attorney fees; (2) the minimum amount necessary to deter future misconduct; and (3) the ability of the sanctioned party or attorney to pay the sanction.[42] These factors "serve as limitations on the amount assessed."[43] Because the misconduct occurred during trial, rather than during discovery, a sanction based on additional expenses incurred by Plaintiff is difficult to assess; Plaintiff does not assert that he incurred additional expenses.

However, a sanction imposed to deter future misconduct is appropriate. In this case, defense counsel wilfully violated two court orders. She encouraged and allowed the violation of Rule 615 by two witnesses, who discussed their testimony in her presence. Defense counsel requested that Rule 615 be invoked, and the Court directed both counsel to police the enforcement of the order, particularly because there were no witnesses present in the courtroom at that time. The Court was led to believe that counsel had advised witnesses that the rule had been invoked. Yet, defense counsel encouraged or allowed two witnesses to discuss their testimony. Notably, these two witnesses were adverse to Plaintiff and key to the defense: Troy Harrison, who was Plaintiff's supervisor and Tonya McConnell, who was the person accused of harassing Plaintiff. Defense counsel has given no explanation for her participation in this violation of Rule 615. Defense counsel's conduct was willful and in bad faith.

Likewise, defense counsel's violation of the Court's limine ruling was willful and in bad faith. The Court clearly ruled that Paula Leidel could not be called as a witness, because she had not been disclosed, because the proffered basis for her testimony was insufficient, and because even if admissible, her testimony might not survive the Rule 403 balancing test. Nevertheless, defense counsel called Paula Leidel into the courtroom and had her walk towards the witness stand, conduct indicating that she intended to call her as a witness anyway.

---

**39.** *See Matter of Baker*, 744 F.2d 1438, 1442 (10th Cir.1984) (*en banc*), *cert. denied* 471 U.S. 1014, 105 S.Ct. 2016, 85 L.Ed.2d 299 (1985) ("If the fault lies with the attorneys, that is where the impact of sanction should be lodged. If the fault lies with the clients, that is where the impact of the sanction should be lodged.")

**40.** *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–46, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991).

**41.** *Id.* at 43, 111 S.Ct. 2123 (citation omitted).

**42.** *White v. General Motors Corp., Inc.*, 908 F.2d 675, 684–85 (10th Cir.1990), *cert. denied* 498 U.S. 1069, 111 S.Ct. 788, 112 L.Ed.2d 850 (1991).

**43.** *Id.* at 684.

Defense counsel's explanation for this was that an associate in her office had told her the Court's limine ruling was wrong; and that she announced the witness's name in front of the jury only because the court reporter asked her to. This response demonstrates that defense counsel has not accepted responsibility for her flagrant violation of the Court's order. Defense counsel's conduct and insufficient or lack of explanation for her conduct, also manifests either intentional or reckless disregard of an attorney's duties to the court.

Thus, the Court considers what monetary sanction would be the minimum amount necessary to deter future misconduct by defense counsel Brenda Head. In light of defense counsel's wilful and bad faith conduct, in light of her apparent disregard of the significance of defying or disregarding the Court's orders, and in light of her lack of explanation or woefully inappropriate explanation of her conduct, the Court will impose a monetary sanction against defense counsel Brenda Head in the amount of $1000 for each violation, for a total of $2000. Although this is not a substantial monetary sanction, the Court considers it sufficient to deter future misconduct, along with the publication of this Order, and the punitive and deterrent effect of the Court's criticism of counsel's conduct. Further, nothing suggests that defense counsel has no ability to pay this $2000 fine.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's Motion for Renewed Judgment as a Matter of Law (Doc. 78) is DENIED.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for New Trial (Doc. 78) is DENIED.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Sanctions (Doc. 78) is GRANTED and that sanction of $2000 is assessed against defense counsel Brenda Head and awarded to Plaintiff.

**IT IS SO ORDERED.**